UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

TRANSAERO, INC.,

           Plaintiff,

      - against –

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

           Defendants.

-------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    **OCT 21 2013**    ★

Civil Action No.
LONG ISLAND OFFICE

**NOTICE OF REMOVAL**

**CV   13   5752**

**BIANCO, J.**

**BROWN, M. J.**

TO:    **THE HONORABLE JUDGES**
      **OF THE UNITED STATES DISTRICT COURT**
      **FOR THE EASTERN DISTRICT OF NEW YORK**

      Defendants Graham Chappell ("Chappell") and International Aviation Services, Pty Ltd.

("IAS") (collectively "Defendants") by and through their undersigned attorneys, remove the

above-captioned action from the Supreme Court of the State of New York County of Suffolk,

Index No. 13-15444, to the United States District Court for the Eastern District of New York.

Defendants Chappell and IAS respectfully alleged as follows:

1.      Plaintiff Transaero, Inc. ("Plaintiff") instituted an action on or about on or about June 13,

2013 by filing a complaint ("Complaint") and amended summons in the Supreme Court of the

State of New York, County of Suffolk, entitled Transaero, Inc. v. Graham Chappell and

International Aviation Services Pty. Ltd., Case no.: 13-15444, a civil action ("the State Court

Action"). A copy of the complaint and amended summons is attached hereto at Exhibit A.

Defendants Graham Chappell and International Aviation Services Pty, Ltd. ("Defendants") both

were served on July 16, 2013 in Melbourne, Australia.

2.      Defendants' time to answer the Complaint has not expired, as via stipulation entered into between Plaintiff and Defendants, Defendants' time to answer runs through October 21, 2013. These attached Complaint and amended summons constitute the entirety of the pleadings in this matter to date.

3.      The Complaint does not state the amount sought in the State Court Action. Defendants have not been served with any paper stating the amount sought in the State Court Action.

4.      The Notice of Removal is timely because Defendants' time to remove does not begin to run until such time as Plaintiff serves Defendants with a paper that explicitly specifies the amount of monetary damages sought (*Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010)), which has not yet occurred.

## DIVERSITY OF CITIZENSHIP

4.      The State Court Action may be removed to this Court by Defendants pursuant to 28 U.S.C. § 1332(a) because it is a dispute between a citizen of The State of New York (Plaintiff) and subjects of a foreign state who are not permanent residents of the United States nor domiciled in the United States (Defendants), in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs:

      a.      Upon information and belief, Plaintiff is a corporation organized under the laws of the State of New York and maintains its principal place of business in Melville, N.Y. (Complaint, ¶ 1).

      b.      Individual defendant Graham Chappell is a citizen of Australia, domiciled in Australia, who is not lawfully admitted for permanent residence in the United

States and who is domiciled in Australia. Defendant International Aviation Pty

Ltd. is incorporated in, and has its principal place of business in, Australia.

(Complaint, ¶¶2-3).

## JURISDICTIONAL AMOUNT

5.      While the Complaint does not set forth the amount in controversy and/or the amount of

damages claimed, the amount in controversy does exceed $75,000.00, to wit:

a.      Through this action, Plaintiff seeks, among other damages, to have Defendants

disgorge and pay to Plaintiff all monies it paid to Defendants from December

2010 through December 2011, due to the alleged disloyalty of one or both of the

Defendants to Plaintiff, as per the "Faithless Servant" doctrine. (Complaint, ¶¶ 82

("As a faithless servant, Defendant is liable to Transaero for its losses as a result

of his disloyal acts, and is required to disgorge all compensation paid to him by

Transaero from the date of his first disloyal acts, in addition to punitive damages

and other equitable and legal relief"); Ad Damnum clause, ¶ (b) (seeking "relief

requiring Defendant to disgorge all monies it has wrongfully obtained as a result

of the foregoing alleged wrongful conduct")), as well as compensatory, punitive

and other legal damages.   (Ad Damnum clause ¶¶ (a)(e));

b.      Specifically, Plaintiff seeks disgorgement of all monies paid to Defendants from

the date of the first alleged disloyal act until termination of the parties'

relationship. The first alleged disloyal act, according to Plaintiff, occurred in

December, 2010. (Complaint ¶ 25).   Plaintiff allegedly terminated its

relationship with Defendants one year later, in December 2011, after learning of the alleged December 2010 act. (Complaint, ¶ 23.)

c.   Accordingly, the period for which Plaintiff seeks disgorgement of all monies paid to Defendants by Plaintiff in this action - which constitutes only some of the monetary damages Plaintiff seeks in this action - is from December 2010 through December 2011.

d.   From the shorter period of January 2011 through September, 2011, Plaintiff paid Defendants Seventy-Five Thousand Dollars ($75,000.00) in salary alone.

e.   In addition to the disgorgement of this $75,000.00, Plaintiff is also seeking, alleged lost profits, punitive damages, compensatory damages and other damages in this matter. (Complaint ¶¶ 53, 57, 62, 67, 76, 85;  Ad Damnum clause, ¶¶ (a), (b)).

6.   Accordingly, removal is appropriate because this controversy is between a citizen of a State and subjects of a foreign state who are not permanent residents of the United States nor domiciled in the United States, in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.   This notice has been filed within the time provided by 28 U.S.C. § 1446(b) and the Federal Rules of Civil Procedure.  As noted above, Defendants' time to answer has not yet expired nor have Defendants been served with a document setting forth the amount demanded in the State Court Action.

8.      Upon the filing of this notice, Defendants will give written notice to Plaintiff's attorneys and will file a copy of this notice with the Clerk of the Court, Supreme Court of the State of New York, County of Suffolk.

WHEREFORE, Defendants Graham Chappell and International Aviation Pty. Ltd. request that the State Court Action now pending in the Supreme Court of the State of New York, County of Suffolk, be removed to this Court.

Dated: Uniondale, New York
       October 21, 2013

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

By: _____
      Gregory S. Lisi
      GLisi@Fochellilaw.com
      333 Earle Ovington Boulevard
      Suite 1010
      Uniondale, New York 11553
      Telephone: (516) 812-6356
*Attorneys for Defendants Graham Chappell and International Aviation Services Pty. Ltd.*

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
---------------------------------------------------------------------X
TRANSAERO, INC.,

                                    Plaintiff,

                    -against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

                                    Defendants.
---------------------------------------------------------------------X

TO THE DEFENDANTS:

INDEX NO.: 13-15444
PURCHASE DATE: 6/13/13

Plaintiff designates SUFFOLK
County as place of trial

*AMENDED SUMMONS*

The basis of the venue is
Place Contract entered into &
Plaintiff's place of business

Plaintiff's place of business
35 Melville Park Road
Melville, N.Y. 11747

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer or, if the complaint is not served with summons, to serve a notice of
appearance, on the Plaintiff's Attorney within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: Garden City, New York
        June 13, 2013

Defendants' Addresses:

GRAHAM CHAPPELL
Suite 2, No. 5 Marine Parade
St. Kilda
Melbourne, VIC 8008, Australia

INTERNATIONAL AVIATION
SERVICES PTY, LTD.
Suite 2, No. 5 Marine Parade
St. Kilda
Melbourne, VIC 8008, Australia

Yours, etc.

ANDREA & TOWSKY, ESQS.
By: FRANK A. ANDREA, III
Attorneys for Plaintiff
320 Old Country Road - Suite 202
Garden City, New York 11530
(516) 739-0081

FILED

JUL 0 1 2013

COUNTY CLERK
JUDITH A. PASCALE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------X

TRANSAERO, INC.,

               Plaintiff,

     -against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

               Defendants.
------------------------------------------------------------X

Index No.: 13-15444

Date Purchased: 6/13/2013

VERIFIED COMPLAINT

FILED

JUL 0 1 2013

COUNTY CLERK
JUDITH A. PASCALE

Transaero, Inc. (hereinafter "Transaero", "Plaintiff" or the "Company"), by its attorneys, Andrea & Towsky, Esqs., hereby brings the following Complaint for damages and injunctive relief against defendants, Graham Chappell (hereinafter "Chappell") and International Aviation Services Pty Ltd. (hereinafter "International Aviation") (collectively the "Defendants") for: (I) breach of contract; (ii) conversion of trade secrets and confidential business information; (iii) unfair competition; (iv) misappropriation of confidential and proprietary information; (v) tortious interference with business relations; (vi) diversion of corporate opportunity, and in support thereof avers as follows:

## I. OVERVIEW

TRANSAERO has commenced this action to recover damages for Defendants' breach of contract, unlawful and improper conduct, as well as for injunctive relief. Transaero seeks to recover damages based upon, among other things, Chappell's scheme to unfairly compete with Transaero, through a company, International Aviation, he used to compete with Transaero, in violation of a Letter Agreement (the "Agreement") he signed at the conclusion of his employment with Transaero, as well as by other unlawful measures. These other unlawful measures include, but are not limited to, his apparent retention and conversion of Transaero's confidential information and trade secrets for the use of an entity acting in direct competition with Transaero, at the very same time he (Chappell) was employed and engaged with Transaero as a sales representative. Defendants' actions have caused Transaero irreparable harm and will continue to

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
---------------------------------------------------------------X

TRANSAERO, INC.,

                              Plaintiff,

        -against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

                    Defendants
---------------------------------------------------------------X

Index No :

Date Purchased:

VERIFIED COMPLAINT

Transaero, Inc. (hereinafter "Transaero", "Plaintiff" or the "Company"), by its attorneys, Andrea &
Towsky, Esqs., hereby brings the following Complaint for damages and injunctive relief against defendants,
Graham Chappell (hereinafter "Chappell") and International Aviation Services Pty Ltd. (hereinafter
"International Aviation") (collectively the "Defendants") for: (I) breach of contract; (ii) conversion of trade
secrets and confidential business information; (iii) unfair competition; (iv) misappropriation of confidential
and proprietary information; (v) tortious interference with business relations; (vi) diversion of corporate
opportunity, and in support thereof avers as follows:

## I. OVERVIEW

TRANSAERO has commenced this action to recover damages for Defendants' breach of contract,
unlawful and improper conduct, as well as for injunctive relief. Transaero seeks to recover damages based
upon, among other things, Chappell's scheme to unfairly compete with Transaero, through a company,
International Aviation, he used to compete with Transaero, in violation of a Letter Agreement (the
"Agreement") he signed at the conclusion of his employment with Transaero, as well as by other unlawful
measures. These other unlawful measures include, but are not limited to, his apparent retention and
conversion of Transaero's confidential information and trade secrets for the use of an entity acting in direct
competition with Transaero, at the very same time he (Chappell) was employed and engaged with Transaero
as a sales representative. Defendants' actions have caused Transaero irreparable harm and will continue to

do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendants must be required to return all property belonging to Transaero, electronic or otherwise, and must be precluded from continuing to induce Transaero customers and suppliers to do business with entities other than Transaero.

## II.  THE PARTIES AND VENUE

1.      Transaero is a corporation organized under the laws of the State of New York, maintaining its principal place of business at 35 Melville Park Road, Melville, New York 11747.

2.      Chappell is a former sales representative for Transaero, who presently resides in Australia. Chappell's last known address is P.O. Box 6002, St. Kilda Road Central, Melbourne VIC 8008, Australia.

3.      International Aviation is a company that, upon information and belief, is organized under the laws of the country of Australia, with offices at P.O. Box 6002, St. Kilda Road Central, Melbourne VIC 8008, Australia.

4.      Venue is proper in this county as Transaero's principal place of business is located within Suffolk County.

5.      The Court has jurisdiction over Defendants, pursuant to CPLR §302(a), because of Chappell's persistent and regular course of conduct in New York, traveling to and attending meetings on at least an annual basis, the compensation he earned while engaged with Transaero was derived in New York, he contracted with the plaintiff in New York for his employment with the plaintiff, the acts giving rise to this Complaint have consequences in New York, and Defendants derive substantial revenue from interstate or international commerce.

6.      Specifically,  Chappell traveled to New York at least once a year since 1999 to attend Transaero's annual sales meeting in Melville, New York. During these essential, regular and consistent visits, Chappell stayed at a hotel in Woodbury, New York, dined in the area, and discussed business with plaintiff and its colleagues for approximately one (1) week during each annual visit.

7.    Upon information and belief, during this period of time, Chappell traveled to New York on other occasions, on Transaero related business as well as for reasons other than to attend Transaero's annual sales meetings.

8.    At Transaero's annual sales meetings, which were essential to Chappell's ability to sell Transaero's products in the market he represented, Chappell regularly gave presentations summarizing the performance of the market in which is was responsible for selling Transaero's products. Additionally, Transaero provided Chappell at these meetings with information about the company's performance, sales data, other markets, new product lines and overall business strategies. Chappell, in turn, utilized this information to embark upon the following years' sales.

9.    Moreover, virtually every product sold by Transaero, included those sold by Chappell (upon information and belief, through the company he organized, International Aviation), is warehoused at Transaero's facility in Melville (the "New York Warehouse"). As such, virtually every transaction placed by Chappell triggered the requisitioning of the product from the New York Warehouse, which involved packing, shipping, and invoicing of the product from New York to its intended international destination. Shipping of the product sometimes included interstate transport of the product.

10.    Chappell's last known visit to New York, as part of his regular, annual and consistent attendance at Transaero's sales meetings, was for Transaero's 2010 annual sales meeting. Chappell was in New York from October 30, 2010 through November 6, 2010.

11.    Chappell is a former sales representative for Transaero. When Chappell completed a sale, Transaero performed an accounting of the transaction, and its associated earned commission, in its accounting department in Melville, New York. Transaero paid Chappell via wire transfer from a bank in New York State. In order to effectuate the wire transfer, Transaero remits a wire transfer fee to the bank.

### III. FACTS COMMON TO ALL COUNTS

12.    Transaero is a distributor of aerospace products, serving the airline, life support and military markets globally.  Transaero, based in New York, engages with sales representatives throughout the world to market and sell its products to third parties.

13.    Chappell began performing services for Transaero in September, 1999.

14.    While engaged and under agreement with Transaero, Chappell was responsible for sales of Transaero products in Australia, New Zealand and Papua New Guinea.  Transaero provided Chappell with the identity of customers to service ("Customer list") and Chappell was responsible for maintaining Transaero's relationships with those customers.

15.    Before becoming employed with Transaero, Chappell had no sales experience in the products Transaero offered to this market.

### IV.  CHAPPELL'S ENGAGEMENT WITH TRANSAERO

16.    Transaero compensated Chappell during his engagement with Transaero in a monthly salary, plus commission, provided him with support services, computer equipment and reimbursement for business expenses and travel, all through the Melville, New York office.

17.    Transaero provided Chappell with operational systems, assistants, research, the benefit of Transaero advertising, goodwill and name recognition, and with promotional marketing and sales support, including exhibiting at trade shows, all of which allowed him (and through International Aviation) to service Transaero's customers in the Australian market.

18.    During Chappell's engagement with Transaero, he gained access to Transaero's confidential information, including but not limited to product bundling, numerous product and/or parts applications, pricing information, financial information and forecasts, sales analyses, global market analyses, quotations

and the identity of Transaero's customer base and their purchasing history, including the names and addresses of contact persons, as well as sales and pricing history, and the identity of Transaero's vendors, suppliers and potential suppliers, all of which is maintained in the Melville, New York office.

19.   On February 7, 2011, Transaero's relationship with Chappell entered a new phase. Transaero wished to move in another direction in the Australian market (and its surrounding areas) and it hired a new sales representative to service this region.

20.   Transaero and Chappell entered into a Letter Agreement, which provided that Transaero would continue to employ Chappell through the end of 2012, but Chappell would assist in the transition of the new sales representative to Transaero's business.

21.   Chappell, however, never actively assisted in the transition.

22.   In return for agreeing to assist in the transition period, and for receiving continued remuneration (including salary, commission, car lease and office lease) Chappell agreed, among other things, "to refrain from entering into any business that will conflict with the interests of Transaero for a period of two (2) years after the conclusion of the transition period, to include: (I) representing, owning or consulting with any company that markets products that would interfere with Transaero's business in the Australian market; (ii) contacting existing customers or principals without the written consent of Transaero; and (iii) marking disparaging remarks to customers, contacts or principals regarding Transaero, its employees and/or principals."

23.   Chappell's transition period with Transaero ended earlier than the term set forth in the Letter Agreement, due to Chappell's breach of said Agreement. In December 2011, Transaero learned that Chappell was aware and failed to advise Transaero that two (2) of Transaero's former sales representatives were unlawfully competing with Transaero.

24.    Transaero further learned that, rather than advise Transaero management of the unlawful competition, Chappell attempted and/or began to participate in (and profit from) the scheme to divert business from Transaero, all in violation of the Letter Agreement.

25.    Specifically, in connection with an unrelated lawsuit against one of its former sales representatives who also breached an Employment Agreement with Transaero, Transaero uncovered an email from December 2010 in which Chappell was facilitating and engaging in the sale of certain products to the Philipino army along with said other former sales representative.

26.    The Philipino army is a customer to which Transaero sold products.

27.    Chappell should have been and was under contract to procure this hardware through Transaero but refused to do so.

28.    Upon information and belief, Defendant's intent was to sell helicopter landing mats to the Philipino army without involving Transaero in the transaction was a clear breach.

29.    Transaero expected, and Chappell understood that Transaero expected, to be included in any sale to the Philipino army. Chappell should have referred this opportunity to Transaero.

30.    Thereafter, Transaero immediately terminated its engagement with Chappell.

## V.  DEFENDANTS IMPROPER COMPETE WITH TRANSAERO BY SUCCESSFULLY SOLICITING SEVERAL OF TRANSAERO'S SUPPLIERS TO USE INTERNATIONAL AVIATION AS ITS EXCLUSIVE DISTRIBUTOR IN AUSTRALIA

31.    One of Transaero's suppliers of military grade earbuds formerly was Communication and Ear Protection, Inc. ("CEP"), based in Alabama. From November 1, 2000 to July, 2012, Transaero was the exclusive distributor for CEP's military grade earbuds in Australia.

32.    Transaero's business is somewhat unique in that it often is the relationship and technical knowledge and support with the supplier of military hardware that is just as, if not more, important than the relationship with the end-user of the hardware.

33.   In mid-summer 2012, CEP advised Transaero it no longer would be using Transaero as the exclusive distributor for CEP's military grade earbuds in Australia.

34.   In November, 2012, Transaero became aware that CEP had agreed to use the Defendants as its exclusive distributor for CEP's military grade earbuds in Australia.

35.   Upon information and belief, Defendants improperly solicited and represented CEP in the Australian market, in violation of the Letter Agreement.

36.   Upon information and belief, Defendant improperly solicited and contacted Transaero customers and principals, including the Australian military, without the written consent of Transaero, while the restrictions set forth in the Letter Agreement were in effect, the full nature and extent of which is unknown to date.

37.   The Australian military was a client with which Chappell developed a relationship solely by virtue of his employment and engagement with Transaero.

38.   Another supplier of military grade products, Signature Industries, sold military survival radios to Transaero in which defendant, Chappell, was to market and sell to the Australian military.

39.   Likewise, Signature Industries stopped using Transaero as its distributor for military survival radios in Australia.

40.   That Transaero became aware that Signature Industries agreed to use the Defendants as its distributor for said military survival radios, all in violation of defendant's, Chappell, agreement with Plaintiff.

41.   Yet another supplier of military grade products, Aqua Lung, sold its Aqua Lung product line to Transaero in which defendant, Chappell, was to market and sell to the Australian and New Zealand military.

42.   As well, Aqua Lung has advised Transaero that its exclusive distribution agreement with Aqua Lung will be terminated as of October, 2013.

43. That Transaero became aware that Aqua Lung has used the defendants as consultants for said military product line, all in violation of defendant's, Chappell, agreement with Plaintiff.

44. Moreover, in violation of his common law and contractual obligations, upon information and belief, Defendants are using Transaero's confidential information for their benefit in furtherance of Chappell's scheme to unfairly compete with Transaero.

45. Upon information and belief, Chappell retains Transaero confidential, technical, financial and client information on his home computer or other electronic device, including, but not limited to, client histories and sales data, quotations and financial reports.

46. Upon information and belief, Defendants continue to engage in, inter alia, the following acts:

    (a) retaining and/or converting for their own use the information contained in confidential Transaero business records;

    (b) soliciting Transaero's customers to transact business with International Aviation, and other entities acting in competition with Transaero, to the detriment of Transaero and in violation of the Letter Agreement;

    (c) rendering services to Transaero's clients and suppliers, by using unlawful means of competition and in violation of the Letter Agreement; and

    (d) other such acts contrary to Chappell's contractual obligations as Agreed to, and acknowledged by Chappell, in the Letter Agreement, as well as common law prohibitions against unfair competition, commercial piracy and other tortious acts

47. Defendants' conduct was and is in furtherance of a scheme to obtain and convert to their own personal use and financial gain, the property of Transaero, the confidential information of Transaero, and the goodwill generated directly and indirectly by Chappell's association with Transaero, and to do so by means of, inter alia, solicitation of clients and suppliers of Transaero serviced by Chappell and whose names and identities became known to Chappell while he was engaged and employed with Transaero.

## COUNT I
## BREACH OF CONTRACT

48.    The allegations in paragraph 1 through 47 are incorporated herein by reference with the same force and effect as if set forth in full below.

49.    A valid and enforceable contract existed between Defendant and Transaero. A copy of the Agreement is attached as Exhibit A.

50.    Transaero performed all of its obligations under the Agreement.

51.    Defendant has violated the Agreement. (See Exhibit "A").

52.    Defendant is continuing to violate his contractual obligations as set forth above.

53.    As a proximate result of Defendant's breach of his Agreement, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

54.    Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be precluded from retaining and further using Transaero's confidential and proprietary business information and continuing to induce Transaero's customers to commence new relationships with International Aviation, and other entities acting in competition with Transaero.

## COUNT II
## CONVERSION

55.    The allegations of Paragraphs 1 through 54 are incorporated herein by reference with the same force and effect as if set forth in full below.

56.    The foregoing conduct of Defendant constitutes a conversion of Transaero's confidential and proprietary information.

57.     As a proximate result of Defendant's unlawful conversion of Transaero property, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

58.     Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to return and cease using Transaero's confidential and proprietary business information and to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with entities other than Transaero.

59.     Unless enjoined, upon information and belief, Defendant will continue to use and convert Transaero's confidential and proprietary information.

## COUNT III
## UNFAIR COMPETITION

60.     The allegations of Paragraphs 1 through 59 are incorporated herein by reference with the same force and effect as if set forth in full below.

61.     The foregoing conduct of Defendant constitutes an unfair method of competition.

62.     As a proximate result of Defendant's methods of unfair competition, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

63.     Unless enjoined, upon information and belief, Defendant will continue to compete unlawfully with Transaero, by use of Transaero's confidential and proprietary information, including, but not limited to, pricing information and customer and contact lists.

64.     Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to

return and cease using Transaero's confidential and proprietary business information and to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with International Aviation, and other entities acting in competition with Transaero.

**COUNT IV**
**MISAPPROPRIATION OF CONFIDENTIAL**
**AND PROPRIETARY INFORMATION**

65.     The allegations of Paragraphs 1 through 64 are incorporated herein by reference with the same force and effect as if set forth in full below.

66.     The foregoing conduct of Defendant constitutes a breach of his common law duty not to use, disclose or misappropriate Transaero's confidential or proprietary information or trade secrets.

67.     As a proximate result of Defendant's misappropriation of confidential Transaero information, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

68.     Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to return and cease using Transaero's confidential and proprietary business information and to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with himself, International Aviation, and other entities acting in competition with Transaero.

69.     Unless enjoined, upon information and belief, Defendant will continue to misappropriate Transaero's confidential or proprietary information or trade secrets.

## COUNT V
## TORTIOUS INTERFERENCE
## WITH BUSINESS RELATIONS

70.     The allegations of Paragraphs 1 through 69 are incorporated herein by reference with the same force and effect as if set forth in full below.

71.     The foregoing conduct of Defendant was and is unethical, unscrupulous, unfair, deceptive and illegal.

72.     Transaero enjoyed valuable business relationships with numerous clients whom Defendant has subsequently solicited on behalf of himself and/or International Aviation.

73.     Defendant knew of Transaero's relationships and expectancies with its clients.

74.     Defendant has intentionally and maliciously interfered with Transaero's business relationships by using Transaero's confidential information to solicit Transaero's clients.

75.     Defendant has induced or caused, and will continue to induce or cause, Transaero's clients to do business with himself and/or International Aviation, and other entities acting in competition with Transaero, to the detriment of Transaero.

76.     As a proximate result of Defendant's unlawful and improper behavior, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

77.     Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with himself, International Aviation, and other entities acting in competition with Transaero.

## COUNT VI
## DIVERSION OF CORPORATE OPPORTUNITY
## AND BREACH OF DUTY OF LOYALTY

78.     The allegations of Paragraphs 1 through 75 are incorporated herein by reference with the same force and effect as if set forth in full below.

79.     The foregoing conduct of Defendant constitutes a breach of his duty of loyalty owed to Transaero while Transaero engaged him.

80.     By virtue of his business relationship with Transaero, Defendant owed a duty of loyalty to Transaero.

81.     Within the scope of Defendant's engagement, Transaero entrusted him to interact with customers on its behalf, entrusted Defendant with confidential information regarding Transaero's business, and Defendant owed Transaero a duty not to exploit his access to customers and confidential information to advance interests of competitors.

82.     As a faithless servant, Defendant is liable to Transaero for its losses as a result of his disloyal acts, and is required to disgorge all compensation paid to him by Transaero from the date of his first disloyal acts, in addition to punitive damages and other equitable and legal relief.

83.     Due to Defendant's conduct in diverting business to a Transaero competitor while he was engaged with Transaero and subject to the terms of the Agreement, Transaero also has been damaged in an amount to be determined at trial.

84.     As a result of the foregoing actions of Defendant, Transaero has suffered and will continue to suffer financial harm.

85.     As a proximate result of Defendant's unlawful and improper behavior, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial and costs and fees in prosecuting this action.

WHEREFORE, by virtue of the foregoing acts complained of in Counts I, II, III, IV , V and VI,

Transaero demands judgment in its favor and against Defendant as follows:

      (a)    For monetary damages, compensatory, punitive and other, according to proof at trial;

      (b)    For relief requiring Defendant to disgorge all monies it has wrongfully obtained as a result of the foregoing alleged wrongful conduct;

      (c)    For injunctive relief as set forth herein;

      (d)    For reasonable attorneys' fees and costs of litigation;

      (e)    For such other relief as the Court may deem just and proper.

Dated: Garden City, New York
June 13, 2013

Respectfully submitted,

ANDREA & TOWSKY, ESQS.
Attorneys for Plaintiff
320 Old Country Road, Suite 202
Garden City, New York 11530
(516) 739-0081

By: _____
FRANK A. ANDREA, III, ESQ.

CORPORATE VERIFICATION

STATE OF NEW YORK          )
                          ) ss.:
COUNTY OF SUFFOLK          )

PERRY K. YOUNGWALL, being duly sworn, deposes and says:

I am the President of TRANSAERO, INC., the plaintiff in the within action; I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

The reason why this verification is made by deponent and not by plaintiff is that plaintiff is a corporation and deponent is an officer thereof, to wit, its President; the sources of deponent's knowledge and the grounds of his belief as to all material therein alleged upon information and belief consists of a company file and personal knowledge of the events.

PERRY K. YOUNGWALL

Sworn to before me this
11th day of June, 2013

Notary Public

DEIRDRE A. McPEAKE
Notary Public, State of New York
NO. 01MC4918891
Qualified in Nassau County
Commission Expires Feb. 1, 2014