UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRANSAERO, INC.,

                    Plaintiff,                13-CV-5752

        -against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES  PTY, LTD.,

                  Defendants.

-----------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


                                  ANDREA & TOWSKY, Esqs.
                                  Attorneys for plaintiff
                                  Transaero, Inc.,
                                  320 Old Country Road
                                  Garden City, New York 11530
                                  (516) 739-0088

Attorney of record
Frank A. Andrea, III Esq.
Valeria Calloway, Esq.

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES.................................................................................i

PRELIMINARY STATEMENT.........................................................................1

PROCEDURAL HISTORY.................................................................................2

APPLICABLE STANDARDS............................................................................2

ARGUMENT.......................................................................................................3

POINT I

THE ALLEGATIONS SET FORTH IN PLAINTIFF'S VERIFIED
COMPLAINT  SATISFY NEW YORK LONG-ARM JURISDICTION.............3

A.  Defendants Transacted Business Within New York and The Claims
Asserted Arose from Business Activity in New York Sufficiently to
Satisfy C.P.L.R.  302(a)(1)............................................................................ 8

B.  Chappell Committed  Tortious Acts Outside The State, Causing
Injury to Transaero's Business Within The State, Sufficient to Satisfy
the Requirements of C.P.L.R. 302(a)(3)......................................................12

C.  The Due Process Requirements Have Been Met Because Plaintiff  Has
Alleged Minimum Contacts in New York................................................15

POINT II

THE VERIFIED COMPLAINT STATES A CAUSE OF ACTION...................18

CONCLUSION..................................................................................................20

i

## PRELIMINARY STATEMENT

Plaintiff, Transaero, Inc. (hereinafter "Plaintiff" or "Transaero'), commenced this action against Defendants, Graham Chappell (hereinafter "Chappell") and Defendant, International Aviation Services PTY, LTD (hereinafter "International Aviation") (collectively the "Defendants"), seeking monetary damages for Defendants breach of contract, as well as, other common law violations involving Chappell's misappropriation of confidential and proprietary information, a scheme to unfairly compete with Transaero, and Chappell's improper solicitations of Transaero's customers. Defendants have moved to dismiss Plaintiff's Verified Complaint, arguing that they are not residents of New York, that New York does not have personal jurisdiction over the defendants and for failure to state a claim upon which relief may be granted, and thus, the Verified Complaint should be dismissed. Additionally, Defendants incorrectly argue that the Complaint does not set forth any actionable factual, as opposed to conclusory, allegations which, if true, would state a viable cause of action. Defendants' motion should be denied for the following reasons:

- Plaintiff's Verified Complaint sets forth several causes of action from which relief can be granted and the allegations contained therein are factual in nature which, if taken as true, state viable causes of action.

- New York long-arm jurisdiction has been established because of Chappell's regular and persistent course of conduct in New York which was in furtherance of his transactions of business with Transaero; and because of Chappell's tortious conduct, which has had consequences in New York.

- Due process has been satisfied because Plaintiff has established Defendants' minimum contacts in New York and the witnesses reside in New York.

Transaero obtained proper New York personal jurisdiction over Defendants when it effectuated service of the Amended Summons and Verified Complaint on Defendants. At a

1

minimum, fairness and substantial justice dictate that this action be maintained in the United

States District Court for the Eastern District of New York, against Defendants, a foreign national

and foreign corporation, since venue here is proper and there is no other venue in which Plaintiff

could seek redress for Defendants' breach of contract and tortious acts.

### PROCEDURAL HISTORY

On or about July 1, 2013, Plaintiff filed an action against Chappell and International

Aviation in the Supreme Court of the State of New York, County of Suffolk. Alleging causes of

action for breach of contract, conversion, unfair competition, misappropriation of confidential

and proprietary information, tortious interference with business relations and diversion of

corporate opportunity and breach of loyalty.   On October 21, 2013, this matter was removed to

this court on diversity grounds.

### APPLICABLE STANDARDS

Personal jurisdiction over a defendant in a diversity action is determined by the law of the

forum in which the Court sits. <u>Arrowsmith v. United Press International,</u> 320 F.2d 219, 223 (2d

Cir. 1963) (en banc).  On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of jurisdiction, the

plaintiff bears the burden of showing that the court has jurisdiction over the defendant.   Prior to

discovery, a plaintiff may defeat a motion to dismiss based on allegations of jurisdiction.

<u>Metropolitan Life Insurance Co. v. Robertson-Ceo Corp.,</u> 84 F.3d 560 92d Cir. 1996).  Thus,

even though, a plaintiff has the ultimate burden of establishing jurisdiction over a defendant by a

preponderance of the evidence, until and evidentiary hearing is held, it need make only a prima

facie showing by its pleadings and affidavit that jurisdiction exists. The Court will construe the

pleadings and affidavit in the light most favorable to, and resolve all doubts in favor of, the

2

plaintiff.  Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985); Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 768 (2d Cir. 1983).  See also CutCo Indus., Inc. v. Naughton, 806 F.2d 361 (2d Cir.1986).  Fed. R. Civ. P. 12(b)(2).

Similar to the Federal Rules, C.P.L.R. §3013 states that a pleading shall be sufficiently particular to give the Court and the parties notice of the transaction, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each causes of action or defense.   Likewise, C.P.L.R. §3026 states that pleadings shall be liberally construed.

As set forth below, Plaintiff's Verified Complaint clearly sets forth allegations which establish long-arm jurisdiction, not only through Defendants' transaction of business in New York but also by their tortious conduct which resulted in significant damage to the Plaintiff in New York.

Additionally, the Affidavit of Transaero's President and CEO, Parry Youngwall further establishes Chappell's regular and persistent transaction of business within New York. See Mr. Youngwall's Affidavit attached as Exhibit B.

## POINT I

## THE ALLEGATIONS SET FORTH  IN PLAINTIFF'S VERIFIED COMPLAINT SATISFY LONG-ARM JURISDICTION

The requirements of long-arm jurisdiction under New York law have been established in this matter.  Pursuant to C.P.L.R. §302(a) "a Court may exercise personal jurisdiction over any non-domiciliary ...who in person or through an agent:

(1)    Transacts any business within the state or contracts anywhere to supply goods or services in the state;

(2)    commits a tortious act without the state causing injury to person or

3

property within the state...if he

    (i)    regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    (ii)   expects or should have reasonable expected the act to have consequences in the state and derives substantial revenue from interstate or international commerce...

§302(a).  Plaintiff has satisfied these requirements by the allegations set forth in the Verified Complaint which fit the requirements of long-arm jurisdiction under C.P.L.R.  §302(a).

Pursuant to the allegations in the Verified Complaint which is attached hereto as Exhibit "A", Plaintiff, Transaero, is a New York corporation, maintaining its principal place of business in Melville, New York. (Complaint ¶ 1).  Transaero is a distributor of aerospace products serving the airline, life support and military markets globally and engages sales representatives throughout the world to market and sell its products to third parties.  (Complaint ¶12).

Plaintiff hired Chappell in 1999 and pursuant to agreement, Chappell was responsible for sales of Transaero's products in Australia, New Zealand and New Guinea.   During his employment, Plaintiff  provided Chappell with confidential information, including, but not limited to, customer identity along with their purchasing history, sales analyses, global market analyses, pricing information, product bundling, sales forecasts, quotations, including supplier information. (Complaint ¶¶ 12, 14, 18).

Transaero compensated Chappell with a monthly salary, plus commission, provided him with support services, computer equipment, reimbursement for business expenses and travel, all paid for through the Melville, New York office and paid through a New York bank. (Complaint ¶¶ 11, 17).

Chappell attend annual meetings in New York, dined in New York, resided in hotels in New York and discussed business with Plaintiff and its colleagues for at least a week at a time. Attendance at the annual sales meeting in New York was essential and enabled Chappell to sell Trasaero's products in the markets he represented. Specifically, Chappell regularly gave presentations summarizing performance of the markets in which he was responsible for servicing. At these meetings, Transaero provide Chappell with information about the company's performance, sales data, new product lines and overall business strategies. Said information was utilized by Chappell to embark upon the following years' sales. (Complaint ¶¶ 8, 11).

Every transaction/order which was placed by Chappell was filled by Transaero from its warehouse located in Melville, New York, and involved packaging, shipping and invoicing of the product from New York to its intended destination. Said shipping included interstate transportation of the product. (Complaint ¶ 9). When Chappell completed a sale, Transaero performed an accounting of the transaction in its accounting department in Melville and paid Chappell via wire transfer from a bank in New York State. (Complaint ¶ 11).

Plaintiff further avers that in 2011, Plaintiff's relationship entered into a new phase because Transaero wished to move in another direction in the Australian market and, therefore, it hired a new sales representative to service this region. On February 7, 2011, Transaero and Chappell entered into a Letter Agreement whereby Chappell agreed to assist in the transition of the new sale representative. In furtherance of the Letter Agreement and during the transition period, Chappell would continue to receive salary, commission, car and office leases. (Complaint ¶¶ 19-22).

Finally, Chappell agreed in writing not to enter into any business that would conflict with

5

the interests of Transaero for a period of two (2) years after the end of the transition period, including (i) not representing, owning or consulting with any company that markets products that would interfere with Plaintiff's business in the Australian market; (ii) contacting any of Plaintiff's customers or principals without Plaintiff's written consent; or (iii) making disparaging remarks to customers, contacts or principals regarding Transaero, its employees and/or principals. (Complaint ¶ 19-22).

The transition period ended earlier than the term set forth in the Letter Agreement, due to Chappell's breach of said agreement. Plaintiff learned in December 2011 that Chappell not only failed to advise Transaero that two (2) of its former sales representatives were unlawfully competing with Transaero and that Chappell began to participate and profit from the scheme to divert business from Transareo, all in violation of the Letter Agreement. (Complaint ¶¶ 23-27).

Additionally, Transaero uncovered an e-mail from December 2010 demonstrating that Chappell facilitated and engaged in the sale of products to the Philipine Army which sale should have been referred to Transaero since the Philippine Army was a customer of Transaero. Further, Chappell was under contract to procure this sale through Transaero, however, refused to do so. Thereafter, Transaero terminated it engagement with Chappell. (Complaint ¶¶ 23-27).

Plaintiff avers that during and after the termination, Chappell wrongfully competed with Transaero by soliciting and diverting Transaero's customers. In particular, Plaintiff alleges that Chappell diverted one of its suppliers of military grade earbuds, Communication and Ear Protection, Inc. ("CEP"), based in Alabama. From November 1, 2000 to July, 2012, Transaero was the exclusive distributor for CEP's military grade earbuds in Australia. In mid-summer of 2012, CEP advised Transaero that it would no longer be using Transaero as the exclusive

6

distributoer for CEP's earbuds in Australia.   In November of 2012, Plaintiff learned that CEP

agreed to use Defendants as its exclusive distributor for its military grade earbuds in Australia.

(Complaint ¶¶ 31-34).

Transaero also alleges that Defendants diverted other customers and suppliers of

Transaero. For example, another supplier of Transaero was Signature Industries that sold military

survival radios to Transaero and, in turn, through Chappell, Plaintiff would market and sell these

military grade products to the Australian military.  Similarly, Signature Industries stopped using

Transaero as its distributor for said military radios in Australia.   Shortly thereafter, Transaero

learned that Signature Industries agreed to retain the Defendants as its distributor for distribution

of military survival radios.  (Complaint ¶¶ 38, 39).

Plaintiff further alleges that Chappell diverted yet another supplier of Transaero identified

as Aqua Lung.  Aqua Lung sold its product line to Transaero (its exclusive distributor) in which

defendant, Chappell,  developed a relationship solely by virtue of his employment and

engagement with Transaeo.  As part of his employment with Transaero, Chappell was to market

and sell the Aqua Lung product line to the Australian and New Zealand military.   Aqua Lung

advised Transaero that its exclusive distribution agreement with Aqua Lung will be terminated as

of October, 2013.  Transareo became aware that Aqua Lung utilized the Defendants as

consultants and that Defendants began selling this product line.  (Complaint ¶¶ 41-43).

The allegations in Plaintiff 's Complaint clearly set forth, *inter alia,* that jurisdiction is

proper under New York's long-arm statute CPLR §302(a), because Chappell, through his

company Aviation Services, engaged in a persistent and regular course of conduct in New York

(Complaint ¶¶ 5-9).

7

The persistent course of conduct consisted of (a) entering into a contract in New York; (b) attending annual meeting in New York wherein Chappell engaged in business discussions with Plaintiff's colleagues, received information about the company's performance, sales data, new product lines and overall business strategies, customer lists, including their purchasing history; (c) while in New York, Chappell conducted product demonstrations summarizing the performance of the market in which he was responsible for selling Transaero's products; (d) Chappell submitted orders by way or invoices and e-mails to Transaero and said orders were filled by Transaero in New York which involved packing, shipping and invoicing of the product from New York to its intended international destination; (e) Chappell was paid a monthly salary, plus commissions from Plaintiff's Melville office and paid through a New York bank; and (f) Chappell received support from Transaero's team in New York, by way of e-mail and by phone including training, technical support and customer information.

As is more fully discussed below, these activities in New York are sufficient to confer this Court's jurisdiction over the Defendants.

A.   Chappell Transacted Business Within New York Sufficient to Satisfy C.P.L.R 302(a)(1)

Not only did Chappell enter into a contract with Transaero in New York wherein he agreed, *inter alia*, to refrain from entering into any business that conflicts with the interests of Transaero but also Chappell submitted numerous orders by way of invoices and e-mails for the purchase of Plaintiff's aerospace products. Each order was to be filled by Transaero from its New York facility located in Melville and shipped overseas. See a copy of the contract marked as Exhibit "C". See also copies of orders attached as Exhibit "D".

For example, Exhibit "D" demonstrates that Chappell submitted orders for the purchase

8

of Transaero's products for the months of June and July of 2011.  Each order is authorized by

Chappell and placed on order forms issued by Chappell's company,  Defendant, International

Aviation.

   Similarly,  Chappell  transacted business by way of e-mail exchanges which were

transmitted between Australia and New York, as well as, various types of assistance Chappell

received from Transaero's New York team.  On December 8, 2010,  Chappell exchanged e-

mails with  Transaero's Operations Manager, John O'Connor for the purchase of aerospace

products to be shipped to Australia .  See Exhibit "E"  are copies of e-mails submitted by

Chappell to Transaero .

   Chappell also exchanged e-mails with Transaero's Accounts Receivable Coordinator,

Anna Agrippino, for the purpose of filling orders,  as well as, for the purpose of arranging

payment for such orders.  Attached as Exhibit "F" are copies of said e-mails.

   Likewise, the e-mail exchange between Chappell and Constance Savino reveal that

Chappell  requested  that AUD funds go into an Australian bank and that the USD funds go into

a US bank so that Chappell did not lose out on the exchange rates.  See Exhibit "G".

   Additionally, as a sales representative for Transaero, Chappell earned a monthly salary,

plus commissions which were paid from Transaero's headquarters in Melville, New York and

paid through a New York bank.  Chappell also received sales training and sales support directly

from Transaero's  New York location.  Sales support included payment of expenses, use of a

vehicle,  in-person technology support, computer equipment and the processing/filling of orders

submitted by Chappell to  Transaero.  See  Affidavit of Transaero's President and CEO marked

as Exhibit "B'  ¶¶ 7, 8.  Attached as Exhibit "H" are copies of  expense reports Chappell

submitted to Transaero in New York.

A further demonstration that Chappell transacted business in New York is indicated by the fact the each year, Chappell traveled to New York for Transaero's annual sales meeting. At the annual sales meeting, Chappell was furnished with exclusive access to pricing and product information, customer base and their purchasing history and proprietary information were discussed. During said meetings, Chappell conducted sales presentations and product presentations which were necessary for Chappell to properly service the markets in which he was responsible. During these and other visits to New York, Chappell would stay at a hotel in Woodbury, New York, dined in the area and discuss business with Transaero's President and CEO, Perry Yougwall, as well as, the Transaero team. See Exhibit "B" § 11.

Jurisdiction has been conferred under C.P.L.R. 301(a)(1) where a defendant, such as Chappell, "purposely avails [himself] of the privilege of conducting business activities within New York, thus invoking the benefits and protections of its laws." Viacom Intern ., v. Melvin Simon Prods., 774 F.Supp. 858, 862 (S.D.N.Y. 1991). It is significant that the transaction of submitting orders for the purchase of Transaero's products to be processed and shipped from its Melville, New York location, entering into a contract in New York and attending annual meetings for the purposes of conducting business satisfies the requirement of the long-arm statute.

The conduct described above is considered a transaction of business in New York sufficient to satisfy the requirement of C.P.L.R. 301(a)(1). See Cosmetch International, LLC v. Der Kwei Enterp. and Co., ltd., 943 F.Supp. 311 (S.D.N.Y. 1996)(court held defendant's visits to New York to perform obligation under contract were directly related to the plaintiff's breach

10

of contract ); <u>Taiblson v. Nat'l Ctr. For Continuing Education,</u> 190 Misc.2d 796, 740 N.Y.S.2d

772 (Civ. Ct. 2002)(where the defendant traveled to New York to meet with the plaintiff, attend

plaintiff's seminar, and had drinks with plaintiff); <u>National Cathode Corp. v. The Mexus Co.,</u>

855 F.Supp. 644 (S.D.N.Y. 1991)(where the defendant met with the plaintiff by attending a trade

show in new York).   These cases present factual circumstances similar, if not identical, to

Chappell's regular and persistent annual sales meeting in Melville, New York, where he stayed in

hotels, dined in New York restaurants, received technical support, and discussed business

(including pricing and product information) necessary to consummate sales for Transaero in

Australia.

Interestingly, Chappell's reliance on  <u>Best Van Lines, Inc. V. Walker,</u> 490 F.3d 239 (2nd

Cir. 2007) provides support for jurisdiction over the Defendants.  In <u>Best</u>, the Court held, in part,

that transacting business includes engaging in active bidding on an open phone line from outside

the forum, execution of a separation agreement, entry in New York by a non domiciliary wherein

defendant attends a meeting and the conducting of audits.  <u>Best Van Lines</u> presents less

substantial contacts than Chappell's regular travel to New York, presentations at annual sales

meetings, reliance on New York-based sales support, reliance on shipping products from a New

York warehouse, receiving payment from a New York bank  and the entering of a contract in

New York.

Defendants' argument that Defendants' did not transact business in New York and that the

claims asserted do not arise from a business activity in New York is simply not true.  Defendants

herein are distorting the facts by arguing  that Chappell serviced client in the Australian market,

not in New York, and in so doing  ignore the fact that each and every order submitted by

11

Chappell for the purchase of Transaero's products was process, filled and shipped from New York to Australia. Transaero has also asserted breach if contract, conversion, unfair competition, misppropriation of confidential and proprietary information, tortious interference with business and diversion of corporate opportunity. Defendant also ignore his reliance upon support of the New York team for his business in Australia. Without such continuous support, Chappell could not have serviced the Australian market.

Moreover, Transaero learned of the underlying conduct of this action for the first time when Vice President, Lance Homan and Operations Manager, John o'Connor, of Transaero came across an e-mail which revealed that Chappell was involved in diverting business opportunities and, thus, in breach of the agreement he entered into with Trasnaero. Chappell was only able to effectuate his scheme based upon his regular and persistent e-mails and phone communications with Transaero, his visits to New York for sales meetings and, his conduct, therefore, is sufficient to demonstrate a transaction of business in New York. Chappell performed pursuant to, and in furtherance of, his sales representative contract, thereby demonstrating a nexus between the claims asserted and his contacts with New York.

Accordingly, Chappell's contacts with New York maintain a sufficient nexus to confer jurisdiction under C.P.L.R. 302(a)(1).

> B. Chappell Committed a Tortious Act Outside The State, Causing Injury
>    To Transaero's Business Within The State, Sufficient to Satisfy the
>    Requirements of C.P.L.R. 302(a)(3)

As clearly articulated in Plaintiff's Verified complaint, Chappell has engaged in conduct sufficient to support a claim for tortious interference with business relations. See Exhibit A ¶¶ 72-77. C.P.L.R. §302(a) has been held to encompass commercial torts. See Sybron Corp. v.

12

Wetzel, 46 N.Y.2d 197, 413 N.Y.S.2d 127 (1978).  Accordingly, there is no dispute that the

claims asserted, including Chappell's conduct in diverting corporate opportunity and tortiously

interfering with Plaintiff's business, constitute commercial torts under the law.  See Exhibit A ¶¶

80-85.

    It is undisputed that Chappell "derives substantial revenue from interstate or international

commerce..." C.P.L.R §302(a)(3)(ii).  Notably, in his affidavit, President and CEO of

Transaero, Perry Young wall states that Chappell diverted clients from Transaero to whom

Transaero supplied military products to for years.  See Youngwall Affidavit as Exhibit "B " §§

19-25.  Such transactions occurred between buyers in Australia, manufacturers in various

locations, including New York and the U.S.A. and Transaero, as distributor in New York.

    Moreover, Chappell committed tortious acts and must have "expect[ed] or should have

reasonably expected the acts to have consequences in the state...' C.P.L.R.  §302(a)(3)(ii).  The

tortious acts alleged was Chappell's interference with Transaero's business relationships with

customers and suppliers.  See Exhibit A ¶¶ §§ 18-25.  Transaero alleges that Chappell carried

out this tortious act in cooperation initially with two (2) of Transaero's former sales

representatives and then on his own.   On several occasions, Chappell appears to have interceded

sales that should rightfully have gone to Transaero from existing customers, such as the

Philippine Army and the Australian Military and diverted such sales to his company International

Aviation Services.  Chappell also diverted suppliers of Transaero namely, Signature Industries

and Aqua Lung, who had exclusive distributorship agreements with Transaero.

    Additionally, Transaero learned that after said suppliers ended their relationship with

Transaero, they employed the services of Defendants.  Chappell's relationship with Plaintiff's

13

customers and suppliers was consummated and cultivated through his employment with Transaero. Such conduct was only possible because Chappell surreptitiously obtained Transaero's confidential business information, including pricing and product information, which Transaero provided to Chappell, among other times, during its regular New York sales meetings Chappell attended. Upon information and belief, this resulted in Chappell securing lower quotes and underbidding Transaero in order to cut it out of the transaction. This tortious act caused direct financial injury to Transaero in New York.

Discovery throughout the course of this litigation will confirm the injury, or anticipated injury, Transaero did, or will, suffer, but it is settled that Plaintiff "" need not actually prove that defendant committed a tort' to satisfy the first element of §302(a)(3)(ii), 'but rather need only state a colorable cause of action.'" Gucci Amarica, Inc. v. Frontline Processing Corp., 721 F.Supp.2d 228, 241(S.D.N.Y. 2010)(quoting Sole Resort, S.A. v. Allure Resorts, Mgmt., LLC, 450 F.3d 100, 106)(2d Cir. 2006)(citation omitted). Transaero has met this requirement.

In Gucci, the Court held that " the pleadings were sufficient to demonstrate injury to a person or property within New York[,]" where Gucci's principal place of business was in New York and "injury [was] based on confusion of lost sales...as well as harm from the diminished reputation.' Gucci at 241. Clearly Chappell's attempts to subvert Transaero's sales have, or will have, a direct effect in New York since 'virtually every product sold by Transaero, including those sold by defendants, is warehoused at Transaero's facility in Melville, New York. ..[and] virtually every transaction placed by Defendants triggered the requisitioning of the product from the New York warehouse...' See Exhibit A¶ 9.

Lost sales caused by Chappell not only resulted in direct economic injury to

14

Transaero, but also to companies with which Transaero contracts for shipping services, and

otherwise. Furthermore, because Transaero alleges Chappell adversely affected its reputation,

Transaero will lose, and has lost, business to New York-based customers; and, importantly, may

be forced to cancel or limit sales from New York-based suppliers. See Exhibit "A" § 85. The

effect of Chappell's tortious conduct will be felt directly in lost transactions between Transaero

and its local suppliers.

Parker Waichman Alonso LLP v. The Orlando Firm, P.C., 2010 U.S. Dist LEXIS 47957

(S.D.N.Y. May 14, 2010) is instructive. There, the Court found personal jurisdiction under

C.P.L.R. 302(a)(3)(ii) because, at least partly, the defendant specifically diverted representation

of clients away from the New York-based plaintiff via a website the defendant created and

operated in Florida. The plaintiff, a New York-based law firm, was injured because"Plaintiff's

claim of harm or threatened harm resulted from the confusion and deception of website viewers,

who are among Plaintiff's potential clients." Id. At *24. Chappell's tortious acts, including

diverting sales and disparaging Transaero, could cause New York suppliers to cease using

Transaero to represent their products, much like the clients in Parker Waichman were diverted

away from the Plaintiff in that case. Chappell's conduct has caused, or has threatened to cause,

harm among and between Plaintiff and its New York suppliers, as well as, other customers.

Clearly, if Transaero's supply chain is disrupted, the chain reaction affects its ability to fill its

warehouse in New York, ship products from New York, and process transactions in New York.

## THE DUE PROCESS REQUIREMENT HAS BEEN MET BECAUSE PLAINTIFF HAS ALLEGED MINIMUM CONTACTS IN NEW YORK

The interests of justice and fairness mandate that this action be maintained in New York and

not dismissed. Following International Shoe v. State of Wasington, 326 U.S. 310 91945), courts

have generally applied a three-part test in evaluating minimum contacts sufficient for jurisdiction; to wit:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections[;] (2) the activities [;and] (3) exercise of jurisdiction must be reasonable.

In the instant matter, not only did the Defendants transact business in New York to permit long arm jurisdiction but also Defendants have sufficient minimum contacts with New York to satisfy the due process requirements as set forth in International Shoe. As indicated above, during his employment with the Plaintiff, Chappell, routinely came to New York to conduct business and during those visits, he secured support and technical training from the Transaero team and, *inter alia,* submitted dozens of orders for the purchase of Transearo's aerospace products. Accordingly, Chappell purposefully availed himself of the privilege of conducting business activities in the forum state and, thus, invoked the protections of the laws of New York.

Courts may also apply the "effects" test as discussed in Calder v. Jones, 465 U.S. 783 (1984), in cases with insufficient interactivity or minimum contacts, but where an action is targeted at a particular forum. In Calder, a California resident in the entertainment business sued the National Inquirer, located in Florida, for libel based on an allegedly defamatory article published by the magazine. While the article was written and edited in Florida, the Court found that personal jurisdiction was properly established in California because of the effects of the defendants' conduct in that state. As the article concerned a California resident with a career in California and relied on California sources, the Court found defendants' "intentional, and

16

allegedly tortious actions were expressly aimed at California."

In the internet context, the effects test can be used to examine the exact nature of a defendant's internet activities to determine whether its out of state actions were directed at parties or entities within the forum state.  This is referred to in the language of <u>Calder v. Jones</u>, *supra*, as "purposeful direction," which requires (a) an international action, that was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state.  If a Court finds that a defendant's actions meets the standard of purposeful direction, then personal jurisdiction may be asserted based upon internet activities which do not meet the requisite level of interactivity or minimal contacts needed for other tests of personal jurisdictin in internet cases.

In <u>Zippo Manufacturing Co. v. Zippo Dot Com.Inc.</u> 952 F. Supp. 1119 (W.D.Pa., 1997), a Federal Court held that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.  This "sliding scale" or "Zippo" Test has been generally accepted as the standard in Federal Courts in deciding personal jurisdiction in internet cases.

In addition to meeting the standard as outlined in <u>International Shoe</u>, *supra*, Plaintiff has demonstrated  that the "effects" test can also be used to examine the exact nature of  Chappell's internet activities to determine whether his  out of state actions were directed at parties and/or entities within the forum state.  In satisfaction of this test,  Chappell submitted various orders to the Transaero's team in New York by utilizing the internet.   Particularly, he submitted orders by way of e-mail transmission  for the purchase of Transaero's  products in New York.  Said internet transmissions were directed to Lance Homan, Vice President of Sales, Anna Agrippino,

17

Accounts Receivable Coordinator and John O'Connor, Vice President of Sales.  <u>See</u> Exhibits

"D" and "E".   Chappell also communicated with Constance Savino in New York,  by way of

the internet to arrange for AUD funds to go into an Australian bank and that the USD fund go

into a US bank so that Chappell did not lose out on the exchange rates.

      Despite Chappell's meritless contentions that Plaintiff has failed to establish that minimal

contacts with the forum, the underlying dispute concerns his contacts with New York and the

affect his actions had or will have in New York.  Moreover, except for Chappell, all interested

witnesses and parties reside in New York.  All Transaero's employees who had contact with

Chappell are located in New York, including PerryYoungwall, President and CEO, and, Lance

Homan and John O'Connor, who discovered and obtained the damaging e-mails which

precipitated this lawsuit.  <u>See</u> Exhibit "B".   Furthermore, the non-party suppliers affected by

Chappell's conduct, and who may ultimately pull their representation from Transaero, are local

companies.  <u>See</u> <u>Sambee Corp., Ltd. v. Moustafa,</u> 216 A.D.2d 196, 628 N.Y.S.2d 664 (1st Dep't

1995) (unanimously reversing the defendant's grant of forum non-conveniens and noting that it

would be inconvenient for witnesses in New York to be transferred to another forum or

dismissed).

      Under these facts, there are no set circumstances where the interests of justice and fair play

would be satisfied by dismissing this case especially, when Chappell is and was a foreign alien

and resident of the country of Australia.

**POINT II**

**PLAINTIFF'S COMPLAINT STATES A CAUSE OF ACTION**

      Defendants' contention, that Plaintiff's Complaint is subject to dismissal  pursuant to Fed.

18

R. Civ. P. 12(b)(6) because it fails to state a cause of action is nothing more than a mis-characterization of the facts averred in the Verified Complaint. For the sake of brevity, and as discussed *supra*, Plaintiff has alleged facts that establish its claims. See Exhibit "A" and Applicable Standards *supra.*

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and, in determining if a plaintiff made a showing of jurisdiction over a defendant, the Court will construe the allegations contained in the complaint as true, and draw all doubts in favor of the plaintiff. Kuck v. Danaher, 600 F.3d 159 (2d Cir. 2010); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

Prior to discovery being had and before conducting a Evidentiary Hearing, a plaintiff need only make a prima facie showing by its pleadings and affidavit that the Court has personal jurisdiction . As in the case here, Transaero has met its initial burden. However, should this Court determine that Plaintiff has not satisfied its initial burden, then it is respectfully suggested that this matter be set down for an Evidentiary Hearing. Metropolitan, *supra.*

That notwithstanding, Plaintiff has clearly alleged that Chappell breached its Letter Agreement in that Chappell agreed, among other things, not engage in any business activity which would conflict with the interest of Transaero for a two(2) year period, including contacting Transaero's customers without the written consent of Transaero. Indeed, that fact that Chappell solicited and diverted several of Transaero's customers and suppliers is a clear violation of the contract between the parties. Plaintiff's Verified Complaint clearly sets forth in detail that Chappell's actions constitute a breach of contract. See Exhibit "A".

Additionally, Plaintiff has sufficiently alleged, among other things, that Defendants

19

tortiously interfered with Transaero's business relations as the Verified Complaint alleges that Chappell contacted, solicited and diverted Plaintiff's customers and suppliers, some of which had exclusive distributor agreements with Transaero. Following termination of said exclusive distributor agreements, it came to the attention of Transaero that these customers and suppliers began to utilize the services of Defendants.

## CONCLUSION

It is clear the Defendants possess the necessary New York contacts for the imposition of personal jurisdiction. For all of the foregoing reasons, Defendants' motion should be denied in its entirely.


Dated:  Garden City, New York
        April 8, 2014


                              Respectfully submitted,


                              ANDREA & TOWSKY, ESQ.,
                              By: FRANK A. ANDREA, III
                              Attorneys for Plaintiff
                              320 Old Country Road, Suite 202
                              Garden City, New York 11530
                              (516) 739-0081


20