UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRANSAERO, INC.,

                Plaintiff,                    13-CV-5752

        -against                    <u>AFFIRMATION IN OPPOSITION<br>TO DEFENDANTS' MOTION TO<br>DISMISS</u>

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

                Defendant.
-------------------------------------------------------------X

        FRANK ANDREA, an attorney admitted to practice law in the United States

Courts for the Eastern district of New York, pursuant to 28 U.S.C. ¶1746, declares under penalty

of perjury under the laws of the United States of America that the below is true and correct.

        1.  I am a partner with the law firm of Andrea & Towsky, Esqs, attorneys for

Plaintiff in the above-captioned matter.  As such, I am fully familiar with the pleadings and

proceedings in this matter.

        2.    A copy of the Verified Complaint in this matter is Attached as Exhibit A.

        3.    A copy of the Affidavit of Perry Youngwall, President and CEO of Plaintiff
             is attached as attached as Exhibit B.

        4.    A copy of the contract entered between the parties is attached as Exhibit C.

        5.    Copies of purchase orders submitted by Defendant to Plaintiff are attached as
             Exhibit D.

        6.    Copies of e-mails to John O'Connor from Defendant for the purchase of
             Plaintiff's products are attached as Exhibit E.

        7.    Copies of e-mails to Ann Agrippino from Defendant for the purchase of
             Plaintiff's products are attached as Exhibit F.

        8.    Copies of e-mails to Constance Savino from Defendant arranging for payment

of money to Defendant via wire transfers are attached as Exhibit G.

9. Copies of expense reports submitted by Defendant to Plaintiff for payment
   are attached as Exhibit H.

Dated: Garden City, New York
       April 7, 2014

_____
FRANK A. ANDREA, III

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

------------------------------------------------------------------X

TRANSAERO, INC.,

                                        Plaintiff,



                    -against-


GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,



                                        Defendants.

------------------------------------------------------------------X

INDEX NO.: 13-15444
PURCHASE DATE: 6/13/13

Plaintiff designates SUFFOLK
County as place of trial

***AMENDED SUMMONS***

The basis of the venue is
Place Contract entered into &
Plaintiff's place of business

Plaintiff's place of business
35 Melville Park Road
Melville, N.Y. 11747

TO THE DEFENDANTS:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer or, if the complaint is not served with summons, to serve a notice of
appearance, on the Plaintiff's Attorney within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: Garden City, New York
        June 13, 2013

Defendants' Addresses:

GRAHAM CHAPPELL
Suite 2, No. 5 Marine Parade
St. Kilda
Melbourne, VIC 8008, Australia

INTERNATIONAL AVIATION
SERVICES PTY, LTD.
Suite 2, No. 5 Marine Parade
St. Kilda
Melbourne, VIC 8008, Australia

Yours, etc.

ANDREA & TOWSKY, ESQS.
By: FRANK A. ANDREA, III
Attorneys for Plaintiff
320 Old Country Road - Suite 202
Garden City, New York 11530
(516) 739-0081

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

INDEX NUMBER: 13-15444
PURCHASE DATE: 6/13/2013

------------------------------------------------------------X
TRANSAERO, INC.,

                                 Plaintiff,

-against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

                                 Defendants.
------------------------------------------------------------X

Plaintiff designates SUFFOLK
County as place of trial

**_SUMMONS_**

The basis of the venue is
Place Contract entered into &
Plaintiff's place of business

Plaintiff's place of business
35 Melville Park Road
Melville, N.Y. 11747

TO THE DEFENDANTS:

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with summons, to serve a notice of appearance, on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Garden City, New York
       June 13, 2013

Defendants' Addresses:

GRAHAM CHAPPELL
P.O. Box 6002
St. Kilda Road Central
Melbourne, VIC 8008, Australia

INTERNATIONAL AVIATION
SERVICES PTY, LTD.
P.O. Box 6002
St. Kilda Road Central
Melbourne, VIC 8008, Australia

Yours, etc.

ANDREA & TOWSKY, ESQS.
By: FRANK A. ANDREA, III
Attorneys for Plaintiff
320 Old Country Road - Suite 202
Garden City, New York 11530
(516) 739-0081

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-----------------------------------------------------------X

TRANSAERO, INC.,

                               Plaintiff,

       -against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

                          Defendants.

-----------------------------------------------------------X

Index No.:  13-15444

Date Purchased: 6/13/2013

VERIFIED COMPLAINT

       Transaero, Inc. (hereinafter "Transaero", "Plaintiff" or the "Company"), by its attorneys, Andrea &

Towsky, Esqs., hereby brings the following Complaint for damages and injunctive relief against defendants,

Graham Chappell (hereinafter "Chappell") and International Aviation Services Pty Ltd. (hereinafter

"International Aviation") (collectively the "Defendants") for:  (I) breach of contract; (ii) conversion of trade

secrets and confidential business information; (iii) unfair competition; (iv) misappropriation of confidential

and proprietary information; (v) tortious interference with business relations; (vi) diversion of corporate

opportunity, and in support thereof avers as follows:

## I. OVERVIEW

       TRANSAERO has commenced this action to recover damages for Defendants' breach of contract,

unlawful and improper conduct, as well as for injunctive relief. Transaero seeks to recover damages based

upon, among other things, Chappell's scheme to unfairly compete with Transaero, through a company,

International Aviation, he used to compete with Transaero, in violation of a Letter Agreement (the

"Agreement") he signed at the conclusion of his employment with Transaero, as well as by other unlawful

measures.  These other unlawful measures include, but are not limited to, his apparent retention and

conversion of Transaero's confidential information and trade secrets for the use of an entity acting in direct

competition with Transaero, at the very same time he (Chappell) was employed and engaged with Transaero

as a sales representative.  Defendants' actions have caused Transaero irreparable harm and will continue to

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------X
TRANSAERO, INC.,

                             Plaintiff,

        -against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

                         Defendants.
------------------------------------------------------------------X

Index No.:

Date Purchased:

VERIFIED COMPLAINT

Transaero, Inc. (hereinafter "Transaero", "Plaintiff" or the "Company"), by its attorneys, Andrea &

Towsky, Esqs., hereby brings the following Complaint for damages and injunctive relief against defendants,

Graham Chappell (hereinafter "Chappell") and International Aviation Services Pty Ltd. (hereinafter

"International Aviation") (collectively the "Defendants") for: (I) breach of contract; (ii) conversion of trade

secrets and confidential business information; (iii) unfair competition; (iv) misappropriation of confidential

and proprietary information; (v) tortious interference with business relations; (vi) diversion of corporate

opportunity, and in support thereof avers as follows:

## I. OVERVIEW

TRANSAERO has commenced this action to recover damages for Defendants' breach of contract,

unlawful and improper conduct, as well as for injunctive relief. Transaero seeks to recover damages based

upon, among other things, Chappell's scheme to unfairly compete with Transaero, through a company,

International Aviation, he used to compete with Transaero, in violation of a Letter Agreement (the

"Agreement") he signed at the conclusion of his employment with Transaero, as well as by other unlawful

measures. These other unlawful measures include, but are not limited to, his apparent retention and

conversion of Transaero's confidential information and trade secrets for the use of an entity acting in direct

competition with Transaero, at the very same time he (Chappell) was employed and engaged with Transaero

as a sales representative. Defendants' actions have caused Transaero irreparable harm and will continue to

do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendants must be required to return all property belonging to Transaero, electronic or otherwise, and must be precluded from continuing to induce Transaero customers and suppliers to do business with entities other than Transaero.

## II. THE PARTIES AND VENUE

1.      Transaero is a corporation organized under the laws of the State of New York, maintaining its principal place of business at 35 Melville Park Road, Melville, New York 11747.

2.      Chappell is a former sales representative for Transaero, who presently resides in Australia. Chappell's last known address is P.O. Box 6002, St. Kilda Road Central, Melbourne VIC 8008, Australia.

3.      International Aviation is a company that, upon information and belief, is organized under the laws of the country of Australia, with offices at P.O. Box 6002, St. Kilda Road Central, Melbourne VIC 8008, Australia.

4.      Venue is proper in this county as Transaero's principal place of business is located within Suffolk County.

5.      The Court has jurisdiction over Defendants, pursuant to CPLR §302(a), because of Chappell's persistent and regular course of conduct in New York, traveling to and attending meetings on at least an annual basis, the compensation he earned while engaged with Transaero was derived in New York, he contracted with the plaintiff in New York for his employment with the plaintiff, the acts giving rise to this Complaint have consequences in New York, and Defendants derive substantial revenue from interstate or international commerce.

6.      Specifically, Chappell traveled to New York at least once a year since 1999 to attend Transaero's annual sales meeting in Melville, New York. During these essential, regular and consistent visits, Chappell stayed at a hotel in Woodbury, New York, dined in the area, and discussed business with plaintiff and its colleagues for approximately one (1) week during each annual visit.

7.    Upon information and belief, during this period of time, Chappell traveled to New York on other occasions, on Transaero related business as well as for reasons other than to attend Transaero's annual sales meetings.

8.    At Transaero's annual sales meetings, which were essential to Chappell's ability to sell Transaero's products in the market he represented, Chappell regularly gave presentations summarizing the performance of the market in which is was responsible for selling Transaero's products. Additionally, Transaero provided Chappell at these meetings with information about the company's performance, sales data, other markets, new product lines and overall business strategies. Chappell, in turn, utilized this information to embark upon the following years' sales.

9.    Moreover, virtually every product sold by Transaero, included those sold by Chappell (upon information and belief, through the company he organized, International Aviation), is warehoused at Transaero's facility in Melville (the "New York Warehouse"). As such, virtually every transaction placed by Chappell triggered the requisitioning of the product from the New York Warehouse, which involved packing, shipping, and invoicing of the product from New York to its intended international destination. Shipping of the product sometimes included interstate transport of the product.

10.    Chappell's last known visit to New York, as part of his regular, annual and consistent attendance at Transaero's sales meetings, was for Transaero's 2010 annual sales meeting. Chappell was in New York from October 30, 2010 through November 6, 2010.

11.    Chappell is a former sales representative for Transaero. When Chappell completed a sale, Transaero performed an accounting of the transaction, and its associated earned commission, in its accounting department in Melville, New York. Transaero paid Chappell via wire transfer from a bank in New York State. In order to effectuate the wire transfer, Transaero remits a wire transfer fee to the bank.

## III. FACTS COMMON TO ALL COUNTS

12.     Transaero is a distributor of aerospace products, serving the airline, life support and military markets globally. Transaero, based in New York, engages with sales representatives throughout the world to market and sell its products to third parties.

13.     Chappell began performing services for Transaero in September, 1999.

14.     While engaged and under agreement with Transaero, Chappell was responsible for sales of Transaero products in Australia, New Zealand and Papua New Guinea. Transaero provided Chappell with the identity of customers to service ("Customer list") and Chappell was responsible for maintaining Transaero's relationships with those customers.

15.     Before becoming employed with Transaero, Chappell had no sales experience in the products Transaero offered to this market.

## IV. CHAPPELL'S ENGAGEMENT WITH TRANSAERO

16.     Transaero compensated Chappell during his engagement with Transaero in a monthly salary, plus commission, provided him with support services, computer equipment and reimbursement for business expenses and travel, all through the Melville, New York office.

17.     Transaero provided Chappell with operational systems, assistants, research, the benefit of Transaero advertising, goodwill and name recognition, and with promotional marketing and sales support, including exhibiting at trade shows, all of which allowed him (and through International Aviation) to service Transaero's customers in the Australian market.

18.     During Chappell's engagement with Transaero, he gained access to Transaero's confidential information, including but not limited to product bundling, numerous product and/or parts applications, pricing information, financial information and forecasts, sales analyses, global market analyses, quotations

and the identity of Transaero's customer base and their purchasing history, including the names and addresses of contact persons, as well as sales and pricing history, and the identity of Transaero's vendors, suppliers and potential suppliers, all of which is maintained in the Melville, New York office.

19. On February 7, 2011, Transaero's relationship with Chappell entered a new phase. Transaero wished to move in another direction in the Australian market (and its surrounding areas) and it hired a new sales representative to service this region.

20. Transaero and Chappell entered into a Letter Agreement, which provided that Transaero would continue to employ Chappell through the end of 2012, but Chappell would assist in the transition of the new sales representative to Transaero's business.

21. Chappell, however, never actively assisted in the transition.

22. In return for agreeing to assist in the transition period, and for receiving continued remuneration (including salary, commission, car lease and office lease) Chappell agreed, among other things, "to refrain from entering into any business that will conflict with the interests of Transaero for a period of two (2) years after the conclusion of the transition period, to include: (I) representing, owning or consulting with any company that markets products that would interfere with Transaero's business in the Australian market; (ii) contacting existing customers or principals without the written consent of Transaero; and (iii) marking disparaging remarks to customers, contacts or principals regarding Transaero, its employees and/or principals."

23. Chappell's transition period with Transaero ended earlier than the term set forth in the Letter Agreement, due to Chappell's breach of said Agreement. In December 2011, Transaero learned that Chappell was aware and failed to advise Transaero that two (2) of Transaero's former sales representatives were unlawfully competing with Transaero.

24.     Transaero further learned that, rather than advise Transaero management of the unlawful competition, Chappell attempted and/or began to participate in (and profit from) the scheme to divert business from Transaero, all in violation of the Letter Agreement.

25.     Specifically, in connection with an unrelated lawsuit against one of its former sales representatives who also breached an Employment Agreement with Transaero, Transaero uncovered an email from December 2010 in which Chappell was facilitating and engaging in the sale of certain products to the Philipino army along with said other former sales representative.

26.     The Philipino army is a customer to which Transaero sold products.

27.     Chappell should have been and was under contract to procure this hardware through Transaero but refused to do so.

28.     Upon information and belief, Defendant's intent was to sell helicopter landing mats to the Philipino army without involving Transaero in the transaction was a clear breach.

29.     Transaero expected, and Chappell understood that Transaero expected, to be included in any sale to the Philipino army. Chappell should have referred this opportunity to Transaero.

30.     Thereafter, Transaero immediately terminated its engagement with Chappell.

## V. DEFENDANTS IMPROPER COMPETE WITH TRANSAERO
## BY SUCCESSFULLY SOLICITING SEVERAL OF TRANSAERO'S SUPPLIERS
## TO USE INTERNATIONAL AVIATION AS ITS
## EXCLUSIVE DISTRIBUTOR IN AUSTRALIA

31.     One of Transaero's suppliers of military grade earbuds formerly was Communication and Ear Protection, Inc. ("CEP"), based in Alabama. From November 1, 2000 to July, 2012, Transaero was the exclusive distributor for CEP's military grade earbuds in Australia.

32.     Transaero's business is somewhat unique in that it often is the relationship and technical knowledge and support with the supplier of military hardware that is just as, if not more, important than the relationship with the end-user of the hardware.

33.    In mid-summer 2012, CEP advised Transaero it no longer would be using Transaero as the exclusive distributor for CEP's military grade earbuds in Australia.

34.    In November, 2012, Transaero became aware that CEP had agreed to use the Defendants as its exclusive distributor for CEP's military grade earbuds in Australia.

35.    Upon information and belief, Defendants improperly solicited and represented CEP in the Australian market, in violation of the Letter Agreement.

36.    Upon information and belief, Defendant improperly solicited and contacted Transaero customers and principals, including the Australian military, without the written consent of Transaero, while the restrictions set forth in the Letter Agreement were in effect, the full nature and extent of which is unknown to date.

37.    The Australian military was a client with which Chappell developed a relationship solely by virtue of his employment and engagement with Transaero.

38.    Another supplier of military grade products, Signature Industries, sold military survival radios to Transaero in which defendant, Chappell, was to market and sell to the Australian military.

39.    Likewise, Signature Industries stopped using Transaero as its distributor for military survival radios in Australia.

40.    That Transaero became aware that Signature Industries agreed to use the Defendants as its distributor for said military survival radios, all in violation of defendant's, Chappell, agreement with Plaintiff.

41.    Yet another supplier of military grade products, Aqua Lung, sold its Aqua Lung product line to Transaero in which defendant, Chappell, was to market and sell to the Australian and New Zealand military.

42.    As well, Aqua Lung has advised Transaero that its exclusive distribution agreement with Aqua Lung will be terminated as of October, 2013.

43.     That Transaero became aware that Aqua Lung has used the defendants as consultants for said military product line, all in violation of defendant's, Chappell, agreement with Plaintiff.

44.     Moreover, in violation of his common law and contractual obligations, upon information and belief, Defendants are using Transaero's confidential information for their benefit in furtherance of Chappell's scheme to unfairly compete with Transaero.

45.     Upon information and belief, Chappell retains Transaero confidential, technical, financial and client information on his home computer or other electronic device, including, but not limited to, client histories and sales data, quotations and financial reports.

46.     Upon information and belief, Defendants continue to engage in, inter alia, the following acts:

    (a)     retaining and/or converting for their own use the information contained in confidential Transaero business records;

    (b)     soliciting Transaero's customers to transact business with International Aviation, and other entities acting in competition with Transaero, to the detriment of Transaero and in violation of the Letter Agreement;

    (c)     rendering services to Transaero's clients and suppliers, by using unlawful means of competition and in violation of the Letter Agreement; and

    (d)     other such acts contrary to Chappell's contractual obligations as Agreed to, and acknowledged by Chappell, in the Letter Agreement, as well as common law prohibitions against unfair competition, commercial piracy and other tortious acts.

47.     Defendants' conduct was and is in furtherance of a scheme to obtain and convert to their own personal use and financial gain, the property of Transaero, the confidential information of Transaero, and the goodwill generated directly and indirectly by Chappell's association with Transaero, and to do so by means of, inter alia, solicitation of clients and suppliers of Transaero serviced by Chappell and whose names and identities became known to Chappell while he was engaged and employed with Transaero.

## COUNT I
## BREACH OF CONTRACT

48.     The allegations in paragraph 1 through 47 are incorporated herein by reference with the same force and effect as if set forth in full below.

49.     A valid and enforceable contract existed between Defendant and Transaero.  A copy of the Agreement is attached as Exhibit A.

50.     Transaero performed all of its obligations under the Agreement.

51.     Defendant has violated the Agreement. (See Exhibit "A").

52.     Defendant is continuing to violate his contractual obligations as set forth above.

53.     As a proximate result of Defendant's breach of his Agreement, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

54.     Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues.  No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be precluded from retaining and further using Transaero's confidential and proprietary business information and continuing to induce Transaero's customers to commence new relationships with International Aviation, and other entities acting in competition with Transaero.

## COUNT II
## CONVERSION

55.     The allegations of Paragraphs 1 through 54 are incorporated herein by reference with the same force and effect as if set forth in full below.

56.     The foregoing conduct of Defendant constitutes a conversion of Transaero's confidential and proprietary information.

57.　As a proximate result of Defendant's unlawful conversion of Transaero property, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

58.　Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to return and cease using Transaero's confidential and proprietary business information and to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with entities other than Transaero.

59.　Unless enjoined, upon information and belief, Defendant will continue to use and convert Transaero's confidential and proprietary information.

**COUNT III**
**UNFAIR COMPETITION**

60.　The allegations of Paragraphs 1 through 59 are incorporated herein by reference with the same force and effect as if set forth in full below.

61.　The foregoing conduct of Defendant constitutes an unfair method of competition.

62.　As a proximate result of Defendant's methods of unfair competition, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

63.　Unless enjoined, upon information and belief, Defendant will continue to compete unlawfully with Transaero, by use of Transaero's confidential and proprietary information, including, but not limited to, pricing information and customer and contact lists.

64.　Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to

return and cease using Transaero's confidential and proprietary business information and to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with International Aviation, and other entities acting in competition with Transaero.

## COUNT IV
## MISAPPROPRIATION OF CONFIDENTIAL
## AND PROPRIETARY INFORMATION

65.     The allegations of Paragraphs 1 through 64 are incorporated herein by reference with the same force and effect as if set forth in full below.

66.     The foregoing conduct of Defendant constitutes a breach of his common law duty not to use, disclose or misappropriate Transaero's confidential or proprietary information or trade secrets.

67.     As a proximate result of Defendant's misappropriation of confidential Transaero information, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

68.     Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to return and cease using Transaero's confidential and proprietary business information and to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with himself, International Aviation, and other entities acting in competition with Transaero.

69.     Unless enjoined, upon information and belief, Defendant will continue to misappropriate Transaero's confidential or proprietary information or trade secrets.

## COUNT V
## TORTIOUS INTERFERENCE
## WITH BUSINESS RELATIONS

70. The allegations of Paragraphs 1 through 69 are incorporated herein by reference with the same force and effect as if set forth in full below.

71. The foregoing conduct of Defendant was and is unethical, unscrupulous, unfair, deceptive and illegal.

72. Transaero enjoyed valuable business relationships with numerous clients whom Defendant has subsequently solicited on behalf of himself and/or International Aviation.

73. Defendant knew of Transaero's relationships and expectancies with its clients.

74. Defendant has intentionally and maliciously interfered with Transaero's business relationships by using Transaero's confidential information to solicit Transaero's clients.

75. Defendant has induced or caused, and will continue to induce or cause, Transaero's clients to do business with himself and/or International Aviation, and other entities acting in competition with Transaero, to the detriment of Transaero.

76. As a proximate result of Defendant's unlawful and improper behavior, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial, and costs and fees in prosecuting this action.

77. Defendant's conduct has also caused Transaero irreparable harm and will continue to do so if the conduct continues. No adequate remedy at law exists that would allow Transaero to avoid this harm. For this reason, and in addition to any other remedies that may be allowed, Defendant must be required to return all property belonging to Transaero, and must be precluded from continuing to induce Transaero customers to commence new relationships with himself, International Aviation, and other entities acting in competition with Transaero.

## COUNT VI
## DIVERSION OF CORPORATE OPPORTUNITY
## AND BREACH OF DUTY OF LOYALTY

78.     The allegations of Paragraphs 1 through 75 are incorporated herein by reference with the same force and effect as if set forth in full below.

79.     The foregoing conduct of Defendant constitutes a breach of his duty of loyalty owed to Transaero while Transaero engaged him.

80.     By virtue of his business relationship with Transaero, Defendant owed a duty of loyalty to Transaero.

81.     Within the scope of Defendant's engagement, Transaero entrusted him to interact with customers on its behalf, entrusted Defendant with confidential information regarding Transaero's business, and Defendant owed Transaero a duty not to exploit his access to customers and confidential information to advance interests of competitors.

82.     As a faithless servant, Defendant is liable to Transaero for its losses as a result of his disloyal acts, and is required to disgorge all compensation paid to him by Transaero from the date of his first disloyal acts, in addition to punitive damages and other equitable and legal relief.

83.     Due to Defendant's conduct in diverting business to a Transaero competitor while he was engaged with Transaero and subject to the terms of the Agreement, Transaero also has been damaged in an amount to be determined at trial.

84.     As a result of the foregoing actions of Defendant, Transaero has suffered and will continue to suffer financial harm.

85.     As a proximate result of Defendant's unlawful and improper behavior, Transaero has suffered substantial damages, including, without limitation, lost profits in an amount to be determined at trial and costs and fees in prosecuting this action.

WHEREFORE, by virtue of the foregoing acts complained of in Counts I, II, III, IV , V and VI, Transaero demands judgment in its favor and against Defendant as follows:

(a) For monetary damages, compensatory, punitive and other, according to proof at trial;

(b) For relief requiring Defendant to disgorge all monies it has wrongfully obtained as a result of the foregoing alleged wrongful conduct;

(c) For injunctive relief as set forth herein;

(d) For reasonable attorneys' fees and costs of litigation;

(e) For such other relief as the Court may deem just and proper.

Dated: Garden City, New York
June 13, 2013

Respectfully submitted,

ANDREA & TOWSKY, ESQS.
Attorneys for Plaintiff
320 Old Country Road, Suite 202
Garden City, New York 11530
(516) 739-0081

By: _____
FRANK A. ANDREA, III, ESQ.

# CORPORATE VERIFICATION

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF SUFFOLK        )

PERRY K. YOUNGWALL, being duly sworn, deposes and says:

I am the President of TRANSAERO, INC., the plaintiff in the within action; I have read the

foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge,

except as to the matters therein stated to be alleged upon information and belief, and as to those

matters I believe it to be true.

The reason why this verification is made by deponent and not by plaintiff is that plaintiff is

a corporation and deponent is an officer thereof, to wit, its President; the sources of deponent's

knowledge and the grounds of his belief as to all material therein alleged upon information and belief

consists of a company file and personal knowledge of the events.

_____
PERRY K. YOUNGWALL

Sworn to before me this
11th day of June, 2013

_____
Notary Public

DEIRDRE A. McPEAKE
Notary Public, State of New York
NO. 01MC4918891
Qualified in Nassau County
Commission Expires Feb. 1, 2014

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

TRANSAERO, INC.,

               Plaintiff,           13-CV-5752

      -against-

GRAHAM CHAPPELL and INTERNATIONAL
AVIATION SERVICES PTY, LTD.,

              Defendant.

-----------------------------------------------------------X

## AFFIDAVIT OF PERRY YOUGWALL IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

STATE OF NEW YORK  )
                    ) ss.:
COUNTY OF SUFFOLK  )

      PERRY YOUNGWALL, being duly sworn deposes and says:

      1. I am the President and Chief Executive Officer of Transaero, Inc. ("Transaero"),

plaintiff in the above-captioned action.

      2. I submit this Affidavit in opposition to Defendants' motion which seeks to dismiss

the Verified Complaint.

      3. Transaero is a duly organized New York corporation maintaining its principal place

of business at 35 Melville Park Road, Melville, New York 11747.

      4. Transaero is a distributor of aerospace products serving the world's airlines,

militaries and ministries of defense globally and maintains ten regional offices internationally,

including, but not limited to Australia.

      5. As President and Chief Executive Officer of Transaero, I maintain first-hand

knowledge of Transaero's relationships with customers, suppliers and sales representatives.

## CHAPPELL HAS SUBSTANTIAL CONTACTS WITH NEW YORK

6. Transaero seeks to recover damages from defendants, Graham Chappell (hereinafter "Chappell") and International Aviation Services PTY Ltd. (hereinafter "International Aviation") (collectively the "Defendants") for Defendants', breach of contract, misappropriation of confidential and proprietary information, a scheme to unfairly compete with Transaero, among other things.

7. Chappell was engaged as a sales representative for Transaero from September, 1999 until we terminated the relationship on or about December, 2011. As sales representative for Transaero, Chappell earned a monthly salary, plus commissions which were paid from Transaero's headquarters in Melville, New York and paid through a New York bank. Chappell also received sales training and sales support directly from this New York location. Sales support included payment of expenses, use of a vehicle, access to confidential pricing and product information, customer base and their purchasing history, in-person technology support, computer equipment and the processing/filling of orders submitted by Chappell to Transaero and from customers in Australia and New Zealand. Before being retained by Transaero, Chappell had limited sales experience in the products Transaero sells. See examples of expense reports submitted by Chappell to Transaero in New York attached hereto as Exhibit " ".

8. Chappell was provided with sales support from Transaero's New York team, including, but not limited to, assistance from Lance Homan, Vice President of Sales, John O'Connor, Operations Manager, Anna Agrippino, the Accounts Receivable Coordinator, Constance Savino and numerous Melville based Program Managers. During his employment, Chappell routinely submitted orders, invoices and numerous e-mails to the New York team for the purchase of aerospace products which were then distributed from the Transaero headquarters

in New York.   Attached hereto and marked as Exhibit " " are copies of orders Chappell submitted to Transaero.

9. A review of the attached orders/invoices clearly demonstrate that Chappell submitted numerous orders to Transaero for products to be shipped to the Australian market. Each order/invoice is requested and authorized by Chappell. For example, on December 8, 2010, Chappell exchanged e-mails with Transaero's Operations Manager, John O'Connor for the purchase of aerospace products to be shipped by Transaero in New York to Australia . Attached as Exhibit " " are copies of e-mails submitted by Chappell to Transaero.

10. Chappell also exchanged e-mails with Transaero's Accounts Receivable Coordinator, Anna Agrippino, for the purpose of filling orders, as well as, for the purpose of arranging payment for such orders. Attached as Exhibit ' " are copies of said e-mails.   Similarly, the e-mail exchange between Chappell and Constance Savino demonstrate that Chappell requested that AUD funds go into an Australlian bank and that the USD funds go into a US bank so that Chappell did not lose out on the exchange rates. See Exhibit "E".

11. Each year during our relationship, Chappell traveled to New York for Transaero's annual sales meeting where products, pricing and proprietary information were discussed. In addition to the annual sales meeting, Chappell also traveled to New York to conduct business and trained several times per year at the Melville location.   As part of his responsibilities, as sales representative, Chappell, himself, made sales presentations at the annual meetings in New York. During these regular and consistent visits, Chappell stayed in a hotel in Woodbury, New York, dined in the area, and discussed business with me and my colleagues for approximately one (1) week during each visit.   All expenses for these trips were paid and coordinated by Transaero from our office in Melville, New York and paid for through a New York Bank.

12.  In February of 2011, our relationship with Chappell took on a new phase and Transaero hired a new sales representative to service Chappell's region.

13.  On February 7, 2011 Transaero and Chappell entered into a Letter Agreement which provided that Transaero would employ Chappell through the end of 2012 and during this transition period Chappell agreed to assist the new representative. In exchange, Chappell agreed to refrain from entering into any business that conflicts with the interests of Transaero for a two years after the transition period, to include:  (i) representing, owning or consulting with any company that markets products that would interfere with Transaero's business in the Australian market; (ii) contacting Transaero's customers or principals without Transaero's written consent; or (iii) making disparaging remarks to customers, contacts or principals regarding Transaero, its employees and/or principals.  Attached hereto and marked as Exhibit " "  is a copy of the contract.

14.  Chapell's transition period with Transaero ended before the term set forth in the Letter Agreement because of Chappell's breach of the Agreement.

15.  I first learned of Chappell's attempts to tortiously interfere and subvert business from Transearo in and around December, 2010.  It was brought to my attention by the discovery of suspicious e-mails that indicated Chappell, individually  was facilitating and engaging in the sale of certain products to the Philipino army, a customer of Transaero.

16 .  We further learned that Chappell embarked on a scheme to directly compete with Transaero for certain sales, including those of Communication and Ear Protection, Inc. ("CEP"), a U.S. company based in Alabama.  From November 1, 2000 to July, 2012, Transaero was the exclusive distributor for CEP's military grade earbuds in Australia.

17.  Additionally, the Australian military was a client with which Chappell directly

developed a personal relationship with solely by virtue of his employment and engagement with Transaero. Chappell, however, contacted and solicited this client for purposes of diverting business from Transaero, without the knowledge and written consent of Transaero.

### CAPPELL'S TORTIOUS CONDUCT HAS SUBSTANTIAL EFFECTS IN NEW YORK

18. Trasaero's customers and suppliers are located around the globe. Some relationships are exclusive.

19. One of Transaero's major suppliers was Signature Industries. Transaero was the distributor for Signature products all over the world and supplied military survival radios in Australia. Chappell, however, diverted Signature Industries from Transaero to himself, after being a supplier of Transaero for years.

20. Yet another supplier of military grade products is Agua Lung who entered into an exclusive distribution agreement with Transaero. Aqua Lung sold its Agua Lung product line thru Transaero, which Chappell was to market and sell to Australia. _M_

21. Similar to Signature Industries, Aqua Lung has advised Transaero that its exclusive distribution agreement will be terminated as of October, 2013.

22. We are aware that Agua Lung has utilized Chappell as a consultant to sale of its military products, all in violation of Chappell's agreement with Transaero.

23. When we learned of Chappell's tortious acts, we discovered he improperly solicited business from the Philippine military, CEP, the Australian military, Signature Industries and Aqua Lung, all Transaero customers and clients, with whom Chappell would not have made contact with if not for his relationship with Transaero. We further discovered he was using confidential and proprietary Transaero pricing information, during his two (2) year non compete period, to compete with Transaero and to disparage Transaero to existing and potential

customers.

24. Such conduct also directly affected our sales and our suppliers, including, but not limited to Signature. Signature Industries stopped using Transaero as its distributor for militarysurvival radios in Australia and upon information and belief, retained Chappell as its sole distributor. The impact was lost sales and revenue to Transaero in New York. Chappell did so in direct contravention of his agreement with Transero.

25. As a result of the foregoing, Transaero has lost business because Chappell has diverted sales away from Transaero. Moreover, since virtually all products are warehoused in Melville, New York, that lost business also affects negatively the freight carriers Transaero uses in New York and all other services related to invoicing, payment, requisitioning shipping products to Transaero and from Transaero to our customers.

PERRY YOUNGWALL

Sworn to before me this
7 day of April, 2014

NOTARY PUBLIC

WENDY L MULLALLY
Notary Public - State of New York
NO. 01MU6208597
Qualified in Suffolk County
My Commission Expires 7-6-2017

# EXHIBIT C



**T R A N S A E R O** delivering innovative technology

7 February, 2011

Graham Chappell
Regional Sales Manager Australian Market

Subject: Transition of Australian Market to New RSM

Dear Graham:

On behalf of Transaero, its ownership, management and personnel, I would like to personally thank you for your years of service with the company. Your efforts on Transaero's behalf have yielded a critically important customer base within the Australian Market.

As discussed, Transaero would like to aid in your transition to retirement in the following manner:

1. Transaero would like to offer you a transition period in the following manner
   a. 100% base salary through the end of the 2011 calendar year
   b. 50% base salary commencing 1 January 2012 through 31 December 2012
2. Company Car Lease – Transaero will continue to reimburse you for the monthly lease payments through the end of the lease term 17 December 2012 at which point the Peugeot 407 will be returned to the leaseholder with no additional liability for Transaero
3. Quarterly commissions will be paid as agreed on paid shipments through the end of the 1st quarter 2011.
4. Monthly office lease will be paid through 1 March 2011

In exchange for the considerations listed above, Transaero offers the following stipulations:
1. You will aid in the transition of the new RSM in the following manner
   a. Introductions of key customers and contacts.
   b. Transition day-to-day contact with customers to new RSM beginning 1 March, 2011.
   c. Assist TA personnel in Melville with transition.

Transaero, Inc
35 Melville Park Road, Suite 100
Melville, NY, USA 11747
T 631 752 1240  F 631 752 1242

transaeroinc.com





**TRANSAERO** delivering innovative technology

    d. Act in a consulting role to new RSM for questions, experiences, clarification on the Australian market.

    e. You will make every effort to make yourself fully available during the transition period.

    f. You agree to refrain from entering into any business that will conflict with the interests of Transaero for a period of _two years_ after the conclusion of the transition period, to include;

        i. Representing, owning, or consulting with any company that markets products that would interfere with Transaero's business in the Australian market.

        ii. Contacting existing customers or principals without the written consent of Transaero

        iii. Making disparaging remarks to customers, contacts or principals regarding Transaero, its employees and/or principals.

Obviously, Transaero has a vested interest in a smooth transition to the new RSM. We appreciate your help in this regard.

Once again, I would like to thank you for your dedication and efforts on the company's behalf. We wish you and your family the best of luck in your future endeavors.

Sincerely,

Sean Kirk, Vice President International Sales

I accept the terms as detailed above:

Signed

Graham Chappell
Date:

15 FEB 2011

Transaero inc address block

Transaero, inc
35 Melville Park Road, Suite 100
Melville, NY, USA 11747
T 631.752.1240  F 631.752.1242

transaeroinc.com 

# EXHIBIT D

# IAS *International Aviation Services Pty Ltd*

IOT- ~~9~~ 419714

*handwritten:* 255324

P.O. Box 6002 ✤ St. Kilda Road Central✤ Melbourne ✤ Victoria 8008
Tel: +61 3 9537 2071 ✤ Fax: +61 3 9537 2658 ✤ E-mail: gochap@bigpond.net.au

## PURCHASE ORDER # Z 275 rev 1

Date: 21 JUN 2011

To:
**Transaero, Inc**
**35 Melville Park Road**
**Melville NY 11747**
**U S A**                Att: **Kevin Mikes**

*handwritten:* SE – NPS
2Y
install – Y
40

Ref Quote # 418817 – please supply the following:

| Item | P/N & Description | Qty | Unit Price | Price - USD |
|------|-----------------|-----|-----------|-------------|
| 001. | TA100703 MRS III O'H Kit (1Yr) | 18 | 92.63 | 1,667.34 |
| 002. | 6204-66 Cristo-Lube Tube 2oz | 6 | 38.00 | 228.00 |
| 003. | PRS21-6 Tool Set, Seal | 4 | 87.50 | 350.00 |
| 004. | TA108343 (Kit for 10 units) SEA 1st Stage OH Kit | 20 | 390.00 | 7,800.00 |
| 005. | TA108344 (Kit for 10 units) SEA 2nd Stage OH Kit | 20 | 210.00 | 4,200.00 |
| 006. | 9440-22 O-Ring Removal Tool | 5 | 11.73 | 58.65 |
| 007. | 108325 Fill Adapter, Scuba | 3 | 110.00 | 330.00 |
| 008. | TOTAL | | | 14,633.99 |

*handwritten at left of rows:* KM (001, 004, 005)

Notes:
a) *Ship all at once via FEDEX Express and pack lightly please.*
b) *Please provide C of C for all items*
c) *No partial shipments*
d) *Advise when ready to ship*

*handwritten:* NPS / doc to inspect PTS.

**Authorized: Graham Chappell**

**Aerospace ✤ Technology ✤ Defence**
Suite 2 ✤ 5 Marine Parade ✤ St. Kilda ✤ Victoria 3182 ✤ Australia
International Aviation Services Pty Ltd ✤ ABN 82 007 194 182

## Facsimile Quotation

| | |
|---|---|
| **Date:** 23-JUN-2011 | **Quote #:** 419714 |

**To:** International Aviation
Services Pty Ltd
P.O. Box 6002
St. Kilda Road Central
Melbourne VIC 8008, Australia

**Your Ref:** PO Z-275 REV 1

**Attn:** Graham Chappell

**Fax No:** 9 011 61 3 95372688    **From:** Kevin Mikes

Transaero is pleased to submit the following quotation for your review:

| Item | Part Number | Description | Quantity | Unt Prc (US) |
|---|---|---|---|---|
| 1 | TA100703 | MRS III Overhaul Kit 1 year | 18 | $92.63 |
| 2 | 8204-66 | Christo-Lube | 6 | $38.00 |
| 3 | PRS21-8 | Tool Set, Seal Installation for PRS-21 | 4 | $87.50 |
| 4 | TA108343 | SBA MK Overhaul 1st Stage 10 Pack | 20 | $390.00 |
| 5 | TA108344 | SBA MK Overhaul 2nd Stage 10 Pack | 20 | $210.00 |
| 6 | 9440-22 | O-Ring Removal Tool kit | 5 | $11.73 |
| 7 | 1083-25 | Scuba Refill Adapter | 3 | $110.00 |
| | | **Total** | | **$14,633.99** |

```
DELIVERY: ITEM 1:     Complete in 8 wks
          ITEM 2:     Complete in 6 wks
          ITEMS 3-5:  Complete in 4 wks
          ITEM 6:     1 in stock - 4 weeks remainder
          ITEM 7:     Complete in stock
```

All items quoted from stock are subject to prior sale
All quoted deliveries are from after receipt of order

*** Continued on page 2 ***

This Quote is subject to Transaero's Sales Order Terms and Conditions; Document #CF701-1 which can be found at
www.transaeroinc.com/salesorder.pdf. By placing an order, Buyer agrees to be bound thereby.

## Facsimile Quotation Continued

| Your Ref: PO Z-275 REV 1 | Quote #: 419714 | Page #: 2 |
| --- | --- | --- |

If license is needed, a U.S.State Department imposed Export License
fee of $250.00 USD will apply.

Contact Graham Chappell prior to shipping order to confirm ship via
method at email address: chappell@transaeroinc.com

Terms Subject to Credit Limit

Validity: 60 Days        F.O.B.: Factory/Origin        Terms: Net 30 Days

PLEASE UPDATE YOUR RECORDS WITH OUR NEW BANKING INFORMATION:
CAPITAL ONE BANK
265 Broadhollow Road, Melville, New York  11747
Acct. No.: 7047321756
ABA Routing No.: 021407912
Swift Code: NFBKUS33
Please send remit advice to: Posting@Transaeroinc.com

Thank you for your continued interest in Transaero's Products

          *** When responding, please reference our quotation #419714 ***

Best regards,

Kevin Mikes
Tel: 631-962-1562
Fax: 631-577-4162
mikes@transaeroinc.com
P/AN              *** TOTAL # OF PAGES   2 ***

This Quote is subject to Transaero's Sales Order Terms and Conditions: Document #CF791-1 which can be found at
www.transaeroinc.com/salesorder.pdf.  By placing an order, Buyer agrees to be bound thereby.

# I A S International Aviation Services Pty Ltd

P.O. Box 6002 ✦ St. Kilda Road Central✦ Melbourne ✦ Victoria 8008
Tel: +61 3 9537 2071 ✦ Fax: +61 3 9537 2688 ✦E-mail: gochap@bigpond.net.au

## PURCHASE ORDER # Z 277

Date: 24 JUN 2011

To:
**Transaero, Inc**
**35 Melville Park Road**
**Melville NY 11747**
**U S A**

*IDT- 420037*
*255948*

Att: Kevin Mikes

For the supply of Aqua Lung products as follows:

| Item | Qty | P/N | & Description | Unit Price | Price - USD |
|------|-----|--------|------------------------|------------|-------------|
| 1. | 10 | 102810 | Pressure Gauge, Dial | 70.00 | 700.00 |
| 2. | 10 | 108326 | Washer Stem Top Nylon | 2.22 | 22.20 |
| 3. | 10 | 106306 | Fill Adapter Port | 11.11 | 111.10 |
| ~~4.~~ | ~~2~~ | ~~108328~~ | ~~Valve Seat SEA~~ | ~~0.00~~ | ~~0.00~~ |

|  |  |  |  | **US$** | **833.30** |

Notes:
 a) No partial shipments.
 b) Please provide C of C
 c) Advise when ready for shipping
 d) Item 4.  Warranty Items

*NPS*

*3/E*
*24*
*49*
*40*

**Authorized:  Graham Chappell**

Aerospace  ✦  Technology  ✦  Defence
Suite 2 ✦  5 Marine Parade  ✦  St. Kilda  ✦  Victoria 3182  ✦  Australia
International Aviation Services Pty Ltd ✦ ABN 82 087 196 152

# *I A S* *International Aviation Services Pty Ltd*

P.O. Box 6002 ✧ St. Kilda Road Central✧ Melbourne ✧ Victoria 8008
Tel: +61 3 9537 2071 ✧ Fax: +61 3 9537 2688 ✧E-mail: gochap@bigpond.net.au

| PURCHASE ORDER # Z 275 rev 2 |
|---|

Date: 26 JUN 2011

255824

To:

**Transaero, Inc**
**35 Melville Park Road**
**Melville   NY 11747**
**U S A**                          Att:  Kevin Mikes

Ref Quote # 418817 – please supply the following:

| Item | P/N & Description | Qty | Unit Price | Price - USD |
|---|---|---|---|---|
| 001. | **TA100703**<br>MRS III O'H Kit (1Yr) | 18 | 92.63 | 1,667.34 |
| 002. | **8204-66**<br>Cristo-Lube Tube 2oz | 6 | 38.00 | 228.00 |
| 003. | **PRS21-8**<br>Tool Set, Seal | 4 | 240.35 | 961.40 |
| 004. | **TA108343 (Kit for 10 units)**<br>SEA 1st Stage OH Kit | 20 | 390.00 | 7,800.00 |
| 005. | **TA108344 (Kit for 10 units)**<br>SEA 2nd Stage OH Kit | 20 | 210.00 | 4,200.00 |
| 007. | **9440-22**<br>O-Ring Removal Tool | 5 | 11.73 | 58.65 |
| 008. | **108325**<br>Fill Adapter, Scuba | 3 | 110.00 | 330.00 |
| 009. | **TOTAL** | | | 15,245.39 |

Notes:
　　a) *Ship all at once via FEDEX Express and pack tightly please.*
　　b) *Please provide C of C for all items*
　　c) *No partial shipments*
　　c) *Advise when ready to ship*

**Authorized:  Graham Chappell**

Aerospace ✧ Technology ✧ Defence
Suite 2 ✧ 5 Marine Parade ✧ St. Kilda ✧ Victoria 3182 ✧ Australia
International Aviation Services Pty Ltd ✧ ABN 52 007 196 152

IDT-4718482  4/7-28

# I A S International Aviation Services Pty Ltd

P.O. Box 6002 ✧ St. Kilda Road Central ✧ Melbourne ✧ Victoria 8008
Tel: +61 3- 9537 2588 ✧ Fax: +61 3 9537 2688 ✧E-mail: gochap@bigpond.net.au

256/98

## PURCHASE ORDER Z 278

To:

Date: 4 JUL 2011

Transaero, Inc
35 Melville Park Road Suite 100
Melville NY 11747
U S A

SHIP 23 NOW

Att: Tony Fiero / Jenna McPartland

| Item | Qty | Description | Unit Price | Price |
|------|-----|-------------|------------|-------|
| 1. | 50 | BL-4712-2 NSN: 3110/015533699 Bearing | 11.00 | 550.00 |

| Total | 550.00 |
|-------|--------|

Notes:
i) Ship Qty 23 now with the remainder Qty 27 asap
ii) OEM C of C required – please email prior to shipping.
iii) Ship USPS Priority Mail International to:

International Aviation Services Pty Ltd
PO Box 6002
St Kilda Road Central
Melbourne 8002
Australia

Graham Chappell

S/E
24
40

Aerospace ✧ Technology ✧ Defence
Suite 2 ✧ 5 Marine Parade ✧ St. Kilda ✧ Victoria 3182 ✧ Australia
International Aviation Services Pty Ltd ✧ ABN 82 007 196 152

E-mailed/ Faxed/
Date:      By:

# ORDER IDT-422005

# I A S International Aviation Services Pty Ltd

P.O. Box 6002 ✧ St. Kilda Road Central✧ Melbourne ✧ Victoria 8008
Tel: +61 3 9537 2071 ✧ Fax: +61 3 9537 2688 ✧E-mail: gochap@bigpond.net.au

## PURCHASE ORDER # Z 280

Date: 20 JUL 2011

*256867*

To:

**Transaero, Inc**
**35 Melville Park Road**
**Melville  NY 11747**
**U S A**

Att:  Kevin Mikes

Ref Quote # 418817 – please supply the following items in addition to those ordered on PO Z275. Ideally both purchase orders should be shipped together on 01 SEP 2011:

| Item | P/N & Description | Qty | Unit Price | Price - USD |
|------|------------------|-----|-----------|-------------|
| 001. | **TA100703** <br> MRS III O'H Kit (1Yr) | 10 | 92.63 | 926.30 |
| 002. | **8204-66** <br> Cristo-Lube Tube 2oz | 2 | 38.00 | 76.00 |
| 003. | **TA108343 (Kit for 10 units)** <br> SEA 1st Stage OH Kit | 5 | 390.00 | 1,950.00 |
| 005. | **TA108344 (Kit for 10 units)** <br> SEA 2nd Stage OH Kit | 5 | 210.00 | 1,050.00 |
| 007. | **9440-22** <br> O-Ring Removal Tool | 6 | 11.73 | 70.38 |
| 008. | **TOTAL** | | | 4,072.68 |

Notes:  
    a) Ship all at once via FEDEX Express and pack tightly please.  
    b) Please provide C of C for all items  
    c) No partial shipments – Combine with PO Z 275  
    c) Advise when ready to ship

9/5/11

**Authorized:   Graham Chappell**

Aerospace  ✧  Technology  ✧  Defence
Suite 2 ✧ 5 Marine Parade  ✧  St. Kilda  ✧  Victoria 3182  ✧  Australia
International Aviation Services Pty Ltd ✧ ABN 82 007 196 152

# IDT- 421887

# *I A S* International Aviation Services Pty Ltd

P.O. Box 6002 ✧ St. Kilda Road Central✧ Melbourne ✧ Victoria 8008
Tel: +61 3 9537 2071 ✧ Fax: +61 3 9537 2688 ✧E-mail: gochap@bigpond.net.au

## PURCHASE ORDER # Z 283

Date: 26 JUL 2011

**256864**

To:

**Transaero, Inc
35 Melville Park Road
Melville  NY 11747
U S A**

Att: Kevin Mikes

Ref Quote # 421887 – please supply the following items in addition to those ordered on POs Z275/ Z280/281. Ideally these purchase orders should be shipped together on 01 SEP 2011:

| Item | P/N & Description | Qty | Unit Price | Price - USD |
|------|------------------|-----|------------|-------------|
| 001. | **1083420**<br>ALSE Technicians Kit | 6 | 1,125.00 | 6,750.00 |
| 002. | **100398**<br>Bottle Vice Clamp | 6 | 157.14 | 942.84 |
| 003. | **TOTAL** | | | 7,692.84 |

Notes:
    a) *Contact before shipping.*
    b) *Please provide C of C for all items*
    c) *No partial shipments – Combine with PO Z 275/ 280/281*
    c) *Advise when ready to ship*

**Authorized:  Graham Chappell**

Aerospace  ✧  Technology  ✧  Defence
Suite 2 ✧  5 Marine Parade  ✧  St. Kilda  ✧  Victoria 3182  ✧  Australia
International Aviation Services Pty Ltd  ✧  ABN 82 007 196 152

**ORDER IDT-422552**

# *I A S* International Aviation Services Pty Ltd

P.O. Box 6002 ✧ St. Kilda Road Central ✧ Melbourne ✧ Victoria 8008
Tel: +61 3 9537 2071 ✧ Fax: +61 3 9537 2488 ✧ E-mail: gochap@bigpond.net.au

## PURCHASE ORDER # Z 285

Date: 29 JUL 2011

257252

To:
**Transaero, Inc**
**35 Melville Park Road**
**Melville  NY 11747**
**U S A**              Att:  Kevin Mikes

For the supply of Aqua Lung products as follows:

| Item | P/N & Description | Qty | Unit Price | Price - USD |
|------|------------------|-----|-----------|-------------|
| 001. | 1116-10<br>IP Line Test Gauge 0-400psi | 1 | 77.05 | 77.05 |
| 002. | 108388<br>Bottle Vice Clamp | 2 | 165.00 | 330.00 |
| 003. | 54326A22<br>Rubber Strap Wrench | 2 | 30.00 | 60.00 |
| 004. | 108308<br>Port, Fill | 6 | 12.00 | 72.00 |
| 005 | 102810<br>Gauge, Dial 3K psi, Black | 6 | 75.00 | 450.00 |
| 006. | 108361<br>Tool Pouch | 1 | 120.00 | 120.00 |
| 007. | 9-4770S<br>Cylinder Inspection Light | 1 | 25.00 | 25.00 |
| 008. | TOTAL | | | 1,104.05 |



Notes:       a) Ship all at once via FEDEX Express and pack tightly please.
             b) Please provide C of C
             c) Advise before shipping - Coordinate with Kevin Mikes

$QE - NPS$
24
40
Comments: KM/Joc to inspect
PTS  (4)

Authorized:  **Graham Chappell**

**Aerospace ✧ Technology ✧ Defence**
Suite 2 ✧ 5 Marine Parade ✧ St. Kilda ✧ Victoria 3182 ✧ Australia
International Aviation Services Pty Ltd ✧ ABN 62 007 196 152

**Francisco, Gilbert**

| | |
|---|---|
| From: * | Graham Chappell [chappell@transaeroinc.com] |
| Sent: | Tuesday, July 05, 2011 8:41 PM |
| To: | Francisco, Gilbert |
| Subject: | RE: IDT-418482 |

G'day Francisco:

Thanks for your message.

I don't have an idea of how big each of these items are. On previous supplies some of these Breeze parts were quite small and came in a big box thus costing up to $200 for the carton. Can you see if these items could be placed inside the Helmet Carton together with the HGU-56/P that we have awaiting shipment. This is PO Z 261 and if this is the case then send FEDEX.

 if not – send USPS. The shipments are insured, and take about 10 days whereas the FEDEX shipments can take between 5 and 10 days and cost 3x as much.

Regards
Graham Chappell

From: Francisco, Gilbert [mailto:Francisco@transaeroinc.com]
Sent: Wednesday, 6 July 2011 5:00 AM
To: Chappell, Graham
Subject: IDT-418482

Hi Graham,

Hope all is well.

Per attached PO, we have 23pcs to ship asap, but it says to ship via USPS Priority Mail to a PO Box.

Please be advised, to ensure reliable, efficient delivery, we are opposed to shipping via this method.

Please advise if FedEx, UPS or DHL is acceptable & advise acct info.

Thanks Graham.

Best Regards,
Gilbert R. Francisco
Purchasing Agent
Transaero, Inc.
35 Melville Park Road
Suite 100
Melville, NY 11747
Francisco@TransaeroInc.com
Direct Phone: 631.962.1025
Direct Fax: 631.577.4123
Transaeroinc.com

 

1

**Francisco, Gilbert**

From:         McPartland, Jenna
Sent:         Tuesday, July 05, 2011 2:49 PM
To:           Francisco, Gilbert
Attachments:  hppscan1931.pdf

Yo ship it all today.

Thanks

1