UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 13-CV-5752 (JFB)(GRB)

TRANSAERO, INC.,

Plaintiff,

VERSUS

GRAHAM CHAPPELL AND INTERNATIONAL AVIATION SERVICES PTY LTD.,

Defendants.

**MEMORANDUM AND ORDER**
May 6, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff Transaero, Inc. ("plaintiff" or "Transaero") brings this action against Graham Chappell ("Chappell") and International Aviation Services Pty Ltd. ("IAS") (collectively, "defendants"), alleging that defendants have unlawfully used plaintiff's confidential information and trade secrets to compete unfairly with plaintiff—Chappell's former employer. Specifically, plaintiff asserts the following causes of action under New York law: (1) breach of contract; (2) conversion; (3) unfair competition; (4) misappropriation of confidential and proprietary information; (5) tortious interference with business relations; and (6) breach of the duty of loyalty. Plaintiff seeks damages and injunctive relief.

Before the Court is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court concludes that plaintiff has made a *prima facie* showing of personal jurisdiction over Chappell, but not IAS. Accordingly, the Court grants the motion to dismiss brought under Rule 12(b)(2) with respect to IAS, only. However, the Court will give plaintiff leave to re-plead, so that plaintiff may attempt to provide additional allegations in order to address the personal jurisdiction issue as to IAS. Because the Court denies Chappell's motion to dismiss for lack of personal jurisdiction, it considers Chappell's motion to dismiss for failure to state a claim upon which relief can be granted. The Court grants that motion with respect to the conversion claim only, and denies the motion in all other respects.

I. BACKGROUND

A. Factual Background

The following facts are taken from the complaint. These are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the

1

present motions and construes them in the light most favorable to plaintiff, the non-moving party. The Court provides a more detailed recitation of the facts in connection with the specific issues raised.

Transaero distributes aerospace products to airline, life support, and military industries around the world. (Compl. ¶ 12.) The company is based in Melville, New York. (*Id.* ¶¶ 1, 12.)

Chappell was a sales representative for Transaero from September 1999 until December 2011. (*Id.* ¶¶ 2, 11, 13, 23, 30.) Based in Australia, he was responsible for Transaero's sales in Australia, New Zealand, and Papua New Guinea. (*Id.* ¶ 14.) According to plaintiff, Chappell operated through IAS, a company he organized. (*Id.* ¶ 9.) As a Transaero sales representative, Chappell was paid a salary and received a commission on each sale he generated. (*Id.* ¶ 16.) Almost all products that Chappell sold were stored in Transaero's New York warehouse. (*Id.* ¶ 9.) After completing almost every sale, Chappell, operating through IAS, placed an order with Transaero, who packaged and invoiced the products in its New York warehouse, and then sent those products from New York directly to the seller. (*Id.*)

During his tenure with Transaero, Chappell gained access to a great deal of Transaero's confidential information, including "product bundling, numerous product and/or parts applications, pricing information, financial information and forecasts, sales analyses, global market analyses, quotations and the identity of Transaero's customer base and their purchasing history, including the names and addresses of contact persons, as well as sales and pricing history, and the identity of Transaero's vendors, suppliers and potential suppliers." (*Id.* ¶ 18.) All of this information was maintained at Transaero's Melville, New York office. (*Id.*)

Transaero's relationship with Chappell "entered a new phase" on February 7, 2011. (*Id.* ¶ 19.) Transaero decided to "move in another direction in the Australian market," meaning it decided to hire a new sales representative to service the region. (*Id.*) Transaero and Chappell entered into a Letter Agreement on February 7, 2011, pursuant to which Chappell remained employed by Transaero through the end of 2012 in order to assist the new sales representative's transition to Transaero. (*Id.*) In particular, the Letter Agreement prohibited Chappell "from entering into any business that [would] conflict with the interests of Transaero for a period of two (2) years after the conclusion of the transition period." (*Id.* ¶ 22.) This prohibition covered "(i) representing, owning or consulting with any company that markets products that would interfere with Transaero's business in the Australian market; (ii) contacting existing customers or principals without the written consent of Transaero; and (iii) making disparaging remarks to customers, contacts or principals regarding Transaero, its employees and/or principals." (*Id.*)

Transaero alleges that Chappell breached the Letter Agreement. (*Id.* ¶¶ 23, 51.) Specifically, in December 2011, Transaero learned that Chappell had failed to inform Transaero about two former employees who had been competing unlawfully with Transaero. (*Id.* ¶ 23.) Instead of informing Transaero about these two employees, Chappell attempted to participate in the unlawful competition. (*Id.* ¶ 24.) In particular, Transaero discovered an e-mail from December 2010, in which Chappell was attempting to sell certain products to the Filipino army. (*Id.* ¶ 25.) The Filipino army is a customer of Transaero. (*Id.* ¶ 26.) When Transaero uncovered the December 2010 e-

mail, it terminated Chappell's employment. (*Id.* ¶ 30.)

In addition, Transaero alleges that Chappell and IAS have unlawfully solicited the business of other Transaero customers, including the Australian military. (*Id.* ¶¶ 36, 46.) Transaero also claims that three of its suppliers—Communication and Ear Protection, Inc. ("CEP"), Signature Industries, and Aqua Lung—have terminated their agreements with Transaero, and have turned to Chappell and IAS to distribute their products. (*Id.* ¶¶ 31–35, 38–43.) According to Transaero, Chappell and IAS are using Transaero's confidential information in order to compete unlawfully with Transaero. (*Id.* ¶ 44.)

B. Procedural Background

Plaintiff commenced this action in the Supreme Court of the State of New York, County of Suffolk, on June 13, 2013. Defendants removed the action to this Court on October 21, 2013.

Defendants filed the instant motion on February 2, 2014. Plaintiff filed its opposition to the motion on April 8, 2014, defendants replied to the opposition on April 22, 2014, and the Court heard oral argument on May 2, 2014. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

A. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *see, e.g.*, *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, before discovery and on a motion to dismiss that challenges the sufficiency of the factual allegations, the plaintiff need only make a *prima facie* showing of jurisdiction through its own affidavits and supporting materials to defeat the motion. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013); *see also Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). However, the Court will neither "draw argumentative inferences in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks and citations omitted).

B. Failure to State a Claim

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief

3

that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, the Court instructed district courts to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court notes that, in adjudicating a motion to dismiss under Rule 12(b)(6), it is entitled to consider: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Jones v. Nickens*, 961 F. Supp. 2d 475, 483 (E.D.N.Y. 2013); *David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.*, 934 F. Supp. 2d 533, 539 (E.D.N.Y. 2013), *aff'd*, 542 F. App'x 89 (2d Cir. 2013); *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 524 (E.D.N.Y. 2013), *aff'd*, 548 F. App'x 741 (2d Cir. 2014).

## III. DISCUSSION

### A. Personal Jurisdiction

#### 1. Legal Standard

Resolving issues of personal jurisdiction requires a "'two-part analysis.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) [hereinafter *BBL I*]). First, a district court must determine whether there is personal jurisdiction over the defendant under the laws of the forum state, here, New York. *Id.*; *see, e.g.*, *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) ("In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state . . . ."); *Bensusian Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (same). Under New York law, there are two bases for personal jurisdiction over an out-of-state defendant: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302 ("Section 302"). Second, if the court concludes that the exercise of jurisdiction is proper under the law of the forum state, "the court then must decide whether such exercise comports with the requisites of due process." *Bensusian Rest.*, 126 F.3d at 27.

Where a plaintiff alleges more than one cause of action, the Court must consider whether it has personal jurisdiction for each separate claim. *Huang v. iTV Media, Inc.*, --- F. Supp. 2d ----, No. 13-CV-3439 (JFB) (WDW), 2014 WL 1377500, at *4 n.3 (E.D.N.Y. Apr. 8, 2014).

#### 2. Application

The issue in the instant case is whether this Court has long-arm jurisdiction over defendants, who are non-domiciliaries of

4

New York.[1] For the reasons that follow, the Court concludes that plaintiff has made a *prima facie* showing of personal jurisdiction over Chappell, but not IAS.

### a. Section 302

Section 302(a) sets forth four bases for specific jurisdiction over an out-of-state defendant.[2] As an initial matter, Section 302(a)(2) does not apply here, because plaintiff does not claim that any of the allegedly tortious acts occurred in New York. Section 302(a)(4) is also inapplicable, as plaintiff does not allege that either defendant owns, uses or possesses any real property in New York.[3] Thus, plaintiff must establish long-arm jurisdiction over defendants under either Section 302(a)(1) or Section 302(a)(3).

Section 302(a)(1) provides for personal jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invoke[ed] the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Parke-Bernet Galleries v. Franklyn*, 26 N.Y.3d 13, 17 (1970)) (alteration in original). To establish personal jurisdiction under this statute, "two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)

---

[1] Plaintiff does not argue that this Court has general jurisdiction over defendants, and the complaint does not allege that either defendant engaged in the sort of "continuous and systematic course of doing business" in New York that would support general jurisdiction. *Cf. Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, --- F. App'x ----, No. 13-1639-CV, 2014 WL 1099222, at *2 (2d Cir. Mar. 21, 2014) (summary order) ("To establish general jurisdiction, a plaintiff must set forth facts of a 'continuous and systematic course of doing business' in New York that 'warrant[s] a finding of [defendants'] presence' in the state." (quoting *Laufer v. Ostrow*, 55 N.Y.2d 305, 309–10 (1982) (alterations in original))).

[2] Section 302(a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

[3] Plaintiff does not argue that either Section 302(a)(2) or Section 302(a)(4) applies in the instant case.

5

(citing *McGowan v. Smith*, 52 N.Y.2d 268, 273 (1981)). Among the factors that bear on whether an out-of-state defendant transacts business in New York are: (1) whether the defendant has an on-going contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York and whether, after executing a contract with the New York entity, the defendant visited New York to conduct meetings regarding the relationship; and (3) the choice-of-law clause in any such contract. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (citing *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). No one factor is dispositive; ultimately, the determination is based on the totality of the defendant's interactions with, and activities in, New York. *Id.* With respect to the connection between the plaintiff's cause of action and the defendant's business transactions in New York, the statute "does not require a causal link between the defendant's New York business activity and a plaintiff's injury." *Licci*, 732 F.3d at 168. "Instead, it requires a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Id.* at 168–69 (internal quotation marks omitted).

Section 302(a)(3) provides for long-arm jurisdiction over an out-of-state defendant who committed a tort outside New York, where the tort caused injury within New York. In particular, Section 302(a)(3)(ii) requires proof of the following elements:

> (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (citing *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000)).[4]

### i. Chappell

Chappell worked for Transaero, a company based in New York, from September 1999 to December 2011. (Andrea Aff. Ex. B, Aff. of Perry Youngwall, Apr. 7, 2014 ("Youngwall Aff.") ¶ 7.) Transaero paid Chappell's salary from its New York headquarters through a New York bank. (*Id.*) As an employee of a New York company, Chappell routinely received sales support from New York-based employees, including Transaero's Vice President of Sales, Operations Manager, Accounts Receivable Coordinator, and "numerous Melville[, New York] based Program Managers." (*Id.* ¶ 8.) Sales support included "access to confidential pricing and product information" and Transaero's "customer base and their purchasing history." (*Id.* ¶ 7.) All of the confidential information that Chappell acquires as a sales representative for Transaero is maintained in Transaero's

---

[4] "The same test applies for assessing jurisdiction under Section 302(a)(3)(i), except that instead of the last two elements, the defendant must: (1) engage in conduct in New York that is regular, persistent, or substantial; or (2) derive substantial revenue from goods sold and consumed in New York or services performed in New York." *Symmetra Pty Ltd. v. Human Facets, LLC*, No. 12-CV-8857 (SAS), 2013 WL 2896876, at *5 (S.D.N.Y. June 13, 2013). In the instant case, plaintiff does not rely on Section 302(a)(3)(i). (*See generally* Pl.'s Opp.)

Melville, New York office. (Compl. ¶ 18.) As part of his job as a sales representative, Chappell "routinely submitted orders, invoices and numerous e-mails to the New York team for the purchase of aerospace products which were then distributed from the Transaero headquarters in New York." (Youngwall Aff. ¶ 8; *see also id.* ¶ 10.) Once Chappell placed an order with Transaero, the product was packed and invoiced in New York, and then shipped from New York. (Compl. ¶ 9.) Moreover, Chappell traveled to New York for one week each year to participate in Transaero's annual sales meeting, "where products, pricing and proprietary information were discussed." (Youngwall Aff. ¶ 11.) In addition to the annual sales meetings, Chappell traveled to New York "several times per year" to receive training and "to conduct business." (*Id.*) Finally, toward the end of Chappell's tenure with his New York-based employer, Chappell and Transaero executed a Letter Agreement, pursuant to which Chappell agreed to "refrain from entering into any business that [would] conflict with the interests of Transaero for a period of *two years*" after the end of his employment. (Andrea Aff. Ex. C, Letter Agreement, Feb. 15, 2011 (emphasis in original); *see also* Youngwall Aff. ¶ 13.)

On the basis of these facts, plaintiff has made at least a *prima facie* showing of long-arm jurisdiction over Chappell pursuant to Section 302(a)(1). The Court finds support for its conclusion in several recent decisions involving similar facts, which have held that an out-of-state sales representative who worked for a New York company had transacted business in New York. First, in *LeCroy Corp. v. Hallberg*, the court held that an out-of-state defendant had transacted business in New York because the defendant had "made his living by working for a New York-based company." No. 09-CV-8767 (PKC), 2010 WL 3958761, at *3 (S.D.N.Y. Oct. 4, 2010). In particular, the court found it significant that the defendant—a former sales representative for a New York company—had exchanged e-mails with New York-based employees in order to produce marketing materials, interacted regularly with the New York employer's CEO, received directives from New York, and entered into a confidentiality agreement with his New York employer. *Id.* at *3–4. Similarly, in *Mercator Risk Services Inc. v. Girden*, the court held that out-of-state employees of a New York company had transacted business in New York because they had "interacted with their employer's New York headquarters, accessed data maintained by their employer in New York, availed themselves of the benefit of being employed by a New York company, and generated profits for a New York company." No. 08-CV-10795 (BSJ), 2008 WL 5429886, at *3 (S.D.N.Y. Dec. 30, 2008). The *Mercator* decision also noted that some of the employees had traveled to New York on business. *Id.* Finally, in *Opticare Acquisition Corp. v. Castillo*, the court held that out-of-state sales representatives had transacted business in New York because they "had systematic, ongoing relationships with a New York company." 806 N.Y.S.2d 84, 90 (N.Y. App. Div. 2005). The *Opticare* decision relied on the facts that the out-of-state sales representatives entered into contracts on behalf of their New York employer, obligated that employer to ship products from New York, and created accounts payable and receivable. *Id.* Furthermore, the court concluded that the employees had transacted business in New York "[e]ven assuming none of the [former employees] ever entered New York to conduct business." *Id.*

*Navaera Sciences, LLC v. Acuity Forensic Inc.*, a case upon which Chappell relies, is not to the contrary. *See* 667 F.

Supp. 2d 369, 373–78 (S.D.N.Y. 2009). Unlike *LeCroy*, *Mercator*, *Opticare*, and this case, *Navaera* did not concern the exercise of personal jurisdiction over a former employee of a New York company.[5] In *Navaera*, the plaintiffs (New York limited liability companies) had entered into an agreement with the defendants (a Canadian company and its sole shareholder), pursuant to which the defendants had agreed to be an "independent seller" of the plaintiffs' services and products in Canada. *Id.* at 371–72. In holding that the defendants had not transacted business in New York for purposes of Section 302(a)(1), the court emphasized that the defendants had entered into the agreement with the plaintiffs in Canada, had performed the contract entirely in Canada, and had traveled to New York only on several occasions. *Id.* at 375–76. The defendants' minimal contacts with New York did not warrant the exercise of personal jurisdiction over them, even though the agreement at issue contained a choice of law provision assigning New York as the governing law. *Id.*

This Court finds *LeCroy*, *Mercator*, and *Opticare* both persuasive and directly analogous to the instant case. Like the defendants in those cases—and unlike the defendants in *Navaera*—Chappell "made his living by working for a New York-based company" over a number of years. *LeCroy*, 2010 WL 3958761, at *3. Accordingly, the Court concludes that Chappell transacted business in New York.

---

[5] At oral argument, defendants attempted to distinguish *LeCroy*, *Mercator*, and *Opticare* by arguing that Chappell had not been not Transaero's employee, but an independent contractor. However, plaintiff's complaint, declarations, and exhibits establish that Chappell was an employee of Transaero. (*See, e.g.*, Compl. ¶¶ 15, 38, 47 (referring to Chappell's employment with Transaero); Andrea Aff. Ex. H, Expense Reports (referring to Chappell as a Transaero employee).)

Plaintiff has also made a *prima facie* showing that its claims arise out of Chappell's transaction of business in New York. Simply put, plaintiff's claims arise out of Chappell's alleged breach of the Letter Agreement and his alleged "misappropriation of confidential information that he acquired during his employment" with Transaero. *LeCroy*, 2010 WL 3958761, at *4. In other words, but for his employment activities for a New York employer, Chappell "would not have had access to the confidential information at issue" in plaintiff's causes of action. *LaChapelle v. Torres*, --- F. Supp. 2d ----, No. 12-CV-9362 (AJN), 2014 WL 805955, at *11 (S.D.N.Y. Feb. 28, 2014). Accordingly, the Court concludes that plaintiff has demonstrated the requisite nexus between Chappell's New York business transactions and its causes of action. *See, e.g., id.*; *LeCroy*, 2010 WL 3958761, at *4; *Mercator*, 2008 WL 5429886, at *4; *Opticare*, 806 N.Y.S.2d at 91.

In sum, the Court concludes that Section 302(a)(1) authorizes the exercise of personal jurisdiction over Chappell. Because the Court determines that Section 302(a)(1) provides a basis for the exercise of long-arm jurisdiction over Chappell, the Court need not consider the applicability of Section 302(a)(3) to Chappell.

ii. IAS

The Court cannot say the same for IAS. Plaintiff hardly mentions IAS in its complaint, except to allege vaguely that Chappell organized IAS and sold products through IAS. (*See* Compl. ¶ 9.) Although plaintiff has submitted several purchase orders submitted to Transaero by Chappell on IAS letterhead (Andrea Aff. Ex. D, Purchase Orders), IAS's role in generating the present dispute remains unclear. The fact

that each cause of action refers to "Defendant" in the singular—clear references to Chappell—only adds to the Court's uncertainty about IAS. In short, without any concrete allegations concerning IAS's actions or its relationship to Chappell, plaintiff has failed to make a *prima facie* showing that IAS either transacted business in New York or committed a tort outside New York causing injury within New York. Accordingly, the Court grants IAS's motion to dismiss for lack of personal jurisdiction,[6] without prejudice.[7]

Although the Court grants IAS's motion to dismiss on the basis that plaintiff's allegations concerning IAS are factually insufficient, the Court grants plaintiff leave to amend its complaint. Federal Rule of Civil Procedure 15(a)(2) states that a district court "should freely give leave [to amend] when justice so requires." Moreover, although not required, "the Court may *sua sponte* grant leave to amend." *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004). A district court's discretion to grant such leave "is broad," and depends upon "many factors, including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Under this liberal standard, the Court concludes that it is appropriate to grant leave to amend in the instant case. In particular, the Court notes that plaintiff's action against Chappell will continue, and the defect in plaintiff's complaint with respect to IAS is only a

---

[6] Given the conclusory nature of the allegations regarding IAS's connection to New York or to Chappell, the Court does not grant plaintiff the opportunity to conduct limited discovery on this issue. *See, e.g.*, *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (holding that "a court should not approve a fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper"); *Socialist Workers Party v. Att'y Gen. of U.S.*, 375 F. Supp. 318, 325 (S.D.N.Y. 1974) ("Surely a plaintiff must make some specific factual showing in order to assert such jurisdiction."); *cf. Viko v. World Vision, Inc.*, No. 08-CV-221, 2009 WL 2230919, at *16 (D. Vt. July 24, 2009) ("[T]he Circuit has . . . suggested that district courts may be obligated to order jurisdictional discovery based on a lesser showing [than a *prima facie* case], in particular when the plaintiff fails to allege legally sufficient facts to establish jurisdiction, but nonetheless asserts specific, non-conclusory facts that, if further developed, could demonstrate substantial state contacts." (citing *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002) (summary order))); *Ayyash v. Bank Al-Madina*, No. 04-CV-9201 (GEL), 2006 WL 587342, at *5 (S.D.N.Y. March 9, 2006) ("District courts have considerable discretion in determining how to best handle jurisdictional questions, and generally may allow plaintiff to conduct limited discovery with respect to the jurisdictional issue. Such discovery has typically been authorized where the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction[,] facts that would support a colorable claim of jurisdiction." (internal quotation marks and citations omitted) (alteration in original)); *Hollins v. U.S. Tennis Assoc.*, 469 F. Supp. 2d 67, 71 (E.D.N.Y. 2006) ("[T]he Second Circuit has ordered jurisdictional discovery where plaintiffs allege more than conclusory statements but without supporting facts"). However, as noted *infra*, the Court will give plaintiff an opportunity to re-plead in order to allege additional facts regarding Chappell's relationship to IAS and/or IAS's connection to New York.

[7] A dismissal for lack of personal jurisdiction should be without prejudice because "the resulting judgment of dismissal is not a determination of the claim, but rather a refusal to hear it." *Leviton Mfg. Co., Inc. v. Reeve*, 942 F. Supp. 2d 244, 273 (E.D.N.Y. 2013); *accord Friedman v. Cunard Line Ltd.*, No. 95-CV-5232 (CSH), 1997 WL 698184, at *7 (S.D.N.Y. Nov. 10, 1997) (report & recommendation) ("Because a dismissal for lack of personal jurisdiction does not implicate the merits of plaintiffs' claims, that dismissal will be without prejudice.").

failure to allege sufficient facts to support the exercise of personal jurisdiction over IAS. In other words, better pleading could correct the defect identified in plaintiff's complaint. Accordingly, the Court grants plaintiff leave to file an amended complaint if it wishes to maintain this action against IAS.

b. Due Process

Having concluded that there is an adequate basis for the exercise of specific jurisdiction over Chappell, the Court must determine whether the exercise of jurisdiction over Chappell comports with the Due Process Clause of the Fourteenth Amendment, which requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there."). There are two aspects of the due process analysis: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).

Although the constitutional due process issue is a separate question, "[o]rdinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 90 (S.D.N.Y. 1997). Here, Chappell had sufficient minimum contacts with New York that the exercise of personal jurisdiction over him satisfies due process for the same reasons discussed *supra*: Chappell purposefully "engaged in a major contractual relationship—an employment relationship—with a New York corporation," traveled to New York on numerous occasions in connection with that employment, acquired information belonging to that New York corporation, and "earned profits for that corporation." *Mercator*, 2008 WL 5429886, at *4 (discussing minimum contacts); *see also Chloe*, 616 F.3d at 171 (concluding that "assertion of personal jurisdiction over [defendant] comports with due process for the same reasons that it satisfies New York's long-arm statute").

With respect to the reasonableness inquiry, even where an out-of-state defendant is deemed to have purposefully availed himself of the forum state, a plaintiff "must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus reasonable under the Due Process Clause." *Id.* at 172–73 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). As set forth by the Supreme Court, courts should consider five factors when determining the reasonableness of a particular exercise of jurisdiction:

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It also must weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi*, 480 U.S. at 113 (citation and internal quotation marks omitted). "Where the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be 'few and far between.'" *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 246 (S.D.N.Y. 2010) (quoting *Robertson-Ceco*, 84 F.3d at 575).

Although there may be some burden on Chappell in defending himself in New York, his choice to conduct business in New York in the past suggests that it is not an unreasonable burden. *See, e.g.*, *Huang*, 2014 WL 1377500, at *5 ("Although there may be some burden on Lin in defending himself in New York, his choice to conduct business there suggests that it is not an unreasonable burden."); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129–30 (2d Cir. 2002) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." (internal quotation marks and citation omitted)). The second factor favors keeping New York as the forum state, since "a state frequently has a manifest interest in providing effective means of redress for its residents," *Chloe*, 616 F.3d at 173 (internal quotation marks and citation omitted), as does the third factor, since plaintiff is located here. The fourth and fifth factors appear to be neutral in this case.

Accordingly, the Court concludes that this is not one of the few and far between cases in which the exercise of jurisdiction would be unreasonable despite the fact that plaintiff has satisfied the state long arm statute and minimum contacts analyses. In short, the exercise of personal jurisdiction over Chappell "comports with traditional notions of fair play and substantial justice, such that it satisfies the reasonableness inquiry of the Due Process Clause." *Chloe*, 616 F.3d at 173 (citation and internal quotation marks omitted).

B. Sufficiency of the Allegations

Because the Court concludes that plaintiff has made a *prima facie* showing of personal jurisdiction over Chappell, the Court proceeds to consider Chappell's motion to dismiss for failure to state a claim upon which relief can be granted. The parties do not dispute that New York law controls in this diversity suit. Accordingly, the Court applies New York law. *See, e.g.*, *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law."); *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (internal quotation marks and ellipsis omitted)).

1. Breach of Contract

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Kramer v. N.Y.C. Bd. of Educ.*, 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010) (quoting *RCN Telecom Servs., Inc. v. 202 Centre St. Realty LLC*, 156 F. App'x 349, 350–51 (2d Cir. 2005)). "A breach of contract claim will withstand a motion to dismiss only if plaintiff 'allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated.'" *Kapsis v. Am. Home Mortg. Servicing Inc.*,

923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013) (quoting *Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148 (Table), No. 97-7912, 1998 WL 642463, at *2 (2d Cir. Apr. 16, 1998) (summary order)).

Chappell contends that plaintiff has failed to allege all of the foregoing elements. The Court disagrees. First, plaintiff alleges that it and Chappell executed a Letter Agreement in February 2011. (Compl. ¶¶ 19–20.) Pursuant to that agreement, plaintiff agreed to employ Chappell through 2012 and, in exchange, Chappell agreed "to refrain from entering into any business that [would] conflict with the interests of Transaero for a period of two (2) years after" Chappell's tenure at Transaero ended. (*Id.* ¶¶ 20, 22.) Plaintiff has submitted a copy of that agreement in connection with its opposition to the present motion.[8] Second, plaintiff alleges that it performed all of its obligations under the Letter Agreement until discovering Chappell's breach. (*Id.* ¶¶ 23, 50.) Third, plaintiff alleges that Chappell breached the agreement by contacting and selling products to plaintiff's clients (*see id.* ¶¶ 25–29, 36–37), by executing agreements with plaintiff's distributors (*see id.* ¶¶ 31–34, 38–43), and by using plaintiff's confidential information to compete with plaintiff (*id.* ¶¶ 44–45.) Fourth, plaintiff alleges that it suffered lost profits as a result. (*Id.* ¶ 53.) Contrary to defendants' argument, "'plaintiff is not obligated to show, on a motion to dismiss, that it actually sustained damages'"; plaintiff "'need only plead allegations from which damages attributable to defendant's [breach] might be reasonably inferred.'" *Kapsis*, 923 F. Supp. 2d at 450 (quoting *Rock City Sound, Inc. v. Bashian & Farber, LLP*, 903 N.Y.S.2d 517, 520 (N.Y. App. Div. 2010)). Plaintiff has met that burden here, as its damages may reasonably be inferred from the allegations concerning Chappell's actions to take business away from plaintiff. In sum, plaintiff has adequately alleged a breach of contract claim against Chappell.

### 2. Conversion

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) ("According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995))). A claim for conversion includes a "denial or violation of the plaintiff's dominion, rights, or possession" over his property, *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 487 (1983) (internal quotation marks and citation omitted), and "requires that the defendant exclude the owner from exercising her rights over the goods," *Thyroff*, 460 F.3d at 404 (citing *New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259 (2002)). Thus, "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito*, 8 N.Y.3d at 50 (citations omitted).

Here, plaintiff's conversion claim fails as a matter of law because the types of property allegedly converted—"Transaero's

---

[8] The Court may consider the Letter Agreement in deciding the instant motion because it is integral to, and relied upon in, the complaint. *See, e.g.*, *Jones v. Nickens*, 961 F. Supp. 2d 475, 483 (E.D.N.Y. 2013).

confidential and proprietary information" (Compl. ¶ 56)—"are not amenable to claims for conversion." *Ferring B.V. v. Allergan, Inc.*, No. 12-CV-2650, 2014 WL 988595, at *14 (S.D.N.Y. Mar. 13, 2014). The Court reaches this conclusion notwithstanding the New York Court of Appeals' decision in *Thyroff v. Nationwide Mutual Insurance Co.*, which held that "electronic records that were stored on a computer and were indistinguishable from printed documents . . . [were] subject to a claim of conversion in New York." 8 N.Y. 3d 283, 292–93 (2007). Although *Thyroff* modified the common law rule that only tangible objects could be the subject of a conversion action, *see id.* at 290–92, "[t]he Court does not read *Thyroff* to alter the traditional rule requiring 'the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.'" *Geo Grp., Inc. v. Cmty. First Servs., Inc.*, No. 11-CV-1711 (CBA), 2012 WL 1077846, at *9 (E.D.N.Y. Mar. 30, 2012) (quoting *Harper & Row, Publishers, Inc. v. Nation Enterps.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985)). As Chief Judge Amon has explained,

> *Thyroff* itself had no need to confront this issue because the plaintiff in that case was fully deprived of access to information stored on a computer hard drive. *Thyroff* simply eliminated the law's arbitrary distinction between the theft of information stored on a computer and the theft of information printed on paper. In other words, it expanded the scope of property subject to conversion, not the wrongful conduct necessary to convert it.

*Id.* (holding that wrongful taking of proprietary work product did not give rise to conversion claim). This Court finds *Geo*'s application of New York law to be persuasive. Therefore, because plaintiff has not alleged that Chappell excluded plaintiff from possession or use of plaintiff's confidential and proprietary information, the Court grants defendants' motion to dismiss plaintiff's cause of action for conversion.[9]

### 3. Unfair Competition

The New York Court of Appeals has "long recognized two theories of common-law unfair competition: palming off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007). "Palming off" is "the sale of the goods of one manufacturer as those of another." *Id.* The misappropriation theory of unfair competition "usually concerns the taking and use of the plaintiff's property to compete against the plaintiffs own use of the same property." *Id.* at 478. An unfair competition claim based on a theory of misappropriation requires proof of two elements: (1) defendant "misappropriated the plaintiff's labors, skills, expenditures, or good will"; and (2) "displayed some element of bad faith in doing so." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 446 (E.D.N.Y. 2011) (internal citation and quotation marks omitted). Claims of unfair competition may be based on the misappropriation of trade secrets or ideas, client lists, internal company documents, and business strategies. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008) (citing cases).

Chappell's only objection to plaintiff's unfair competition claim is that plaintiff has

---

[9] At oral argument, counsel for plaintiff conceded that Chappell had not excluded plaintiff from possession or use of plaintiff's confidential and proprietary information.

failed to allege likelihood of confusion by the public. However, "[l]ikelihood of confusion by the public is not an essential element in a misappropriation-based unfair competition claim." *Sidney Frank Importing Co., Inc. v. Beam Inc.*, No. 13-CV-1391 (NSR), 2014 WL 643696, at *13 (S.D.N.Y. Feb. 14, 2014) (citing *Beverage Mktg. USA, Inc. v. S. Beach Beverage Co., Inc.*, 799 N.Y.S.2d 242, 244 (N.Y. App. Div. 2005)); *see Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 198 (2d Cir. 2001) ("An unfair competition claim under New York law is not, therefore, as conceived by the district court, dependent upon a showing of confusion or deception as to the origin of a product or service."); *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 502–03 (E.D.N.Y. 2009) ("Defendant erroneously argues that a required element of an unfair competition claim under New York law is a showing of actual customer confusion or deception as to the origin of the product or service."). The Second Circuit's decision in *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.* is not to the contrary. 58 F.3d 27 (2d Cir. 1995). There, the Second Circuit determined that an unfair competition claim required proof of "either actual confusion in an action for damages or a likelihood of confusion for equitable relief," but that case concerned trademark infringement. *See id.* at 35. However, where an unfair competition claim is not based on trademark infringement, but misappropriation of confidential or proprietary information, the plaintiff need not establish either actual confusion or a likelihood of confusion. *Beverage Mktg. USA*, 799 N.Y.S.2d at 244. Accordingly, the Court determines that the complaint sufficiently alleges an unfair competition claim.

### 4. Misappropriation

"To state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage." *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 745 F. Supp. 2d 343, 352 (S.D.N.Y. 2010) (citing *Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*, 729 N.Y.S.2d 142, 144–45 (N.Y. App. Div. 2001); *B-S Indus. Contractors Inc. v. Burns Bros. Contractors Inc.*, 681 N.Y.S.2d 897, 899 (N.Y. App. Div. 1998)). In addition, where, as here, "the plaintiff and defendant are both parties to a contract, the plaintiff must allege a breach of 'a duty 'independent' of [the] duties under the contract.'" *Id.* (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003)). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).

The allegations in the complaint meet all of the foregoing elements. In particular, the complaint alleges that "Chappell retains Transaero confidential, technical, financial and client information . . . including, but not limited to, client histories and sales data, quotations and financial reports." (Compl. ¶ 45.) It further alleges that Chappell is using this information to solicit plaintiff's customers and suppliers (*id.* ¶ 46), and it points to specific examples where Chappell has allegedly done so (*see id.* ¶¶ 31–43). Finally, plaintiff has alleged that, by misappropriating the confidential and proprietary information of his employer, Chappell breached a duty independent of his duties under the 2011 Letter Agreement. "'Under New York law, an employee has a common law duty of good faith and fair

dealing to the employer not to exploit confidential information for the benefit of himself and others.'" *Wrap-N-Pack, Inc. v. Kaye*, 528 F. Supp. 2d 119, 126 (E.D.N.Y. 2007) (quoting *Paz Sys., Inc. v. Dakota Grp. Corp.*, 514 F. Supp. 2d 402, 409–10 (E.D.N.Y. 2007)). Thus, Chappell's duty to refrain from misappropriating the confidential information of his employer existed independently of the 2011 Letter Agreement. Accordingly, the complaint states a plausible misappropriation claim against Chappell.

### 5. Tortious Interference with Business Relations

A claim for tortious interference with business relations consists of four elements: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). The third element renders this claim—sometimes known as tortious interference with prospective economic advantage—more difficult to prove than the similar claim of tortious interference with a contract. *Id.* "The standard is more demanding because a plaintiff's mere interest or expectation in establishing a contractual relationship must be balanced against the 'competing interest of the interferer,' as well as the broader policy of fostering healthy competition." *Id.* (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980)).

As discussed *supra*, the complaint alleges that plaintiff had business relationships with the Filipino army (Compl. ¶ 26), Communication and Ear Protection, Inc. (*id.* ¶ 31) the Australian military (*id.*

¶ 37), Signature Industries (*id.* ¶ 38), and Aqua Lung (*id.* ¶ 41). The complaint further alleges that Chappell interfered with these relationships by competing directly with plaintiff for the business of plaintiff's clients and distributors, and that, as a result, plaintiff lost business opportunities and long-term, exclusive distribution agreements. (*See generally id.* ¶¶ 26–43.) Finally, the complaint states the "wrongful means" element of this claim because, as described *supra*, it alleges that plaintiff interfered with plaintiff's business relations by committing "an independent tort," *i.e.*, unfair competition and misappropriation. *See, e.g.*, *Catskill*, 547 F.3d at 132 (determining that, for purposes of this cause of action, "a defendant's commission of a crime or an independent tort clearly constitutes wrongful means"); *Carvel Corp. v. Noonan*, 3 N.Y.2d 182, 190 (2004) ("[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort."); *see also Sidney Frank Importing*, 2014 WL 643696, at *15–16 (describing "wrongful means" element of a cause of action for tortious interference with business relations). Accordingly, plaintiff has stated a plausible claim of tortious interference with business relations against Chappell.[10]

### 6. Breach of the Duty of Loyalty

"A claim for breach of fiduciary duty must allege both the existence of a duty based on a relationship of trust and confidence and breach of that duty." *Gortat v. Capala Bros., Inc.*, 585 F. Supp. 2d 372, 376 (E.D.N.Y. 2008) (citing *Fagan v. First Sec. Invs., Inc.*, No. 04-CV-1021 (LTS), 2006 WL 2671044, at *4 (S.D.N.Y. Sept.

---

[10] Chappell's reliance on *White Plains Coat & Apron Co., Inc. v. Cintas Corp.* is misplaced, because that decision concerned tortious interference with an existing contract, not tortious interference with business relations. *See* 460 F.3d 281, 285 (2d Cir. 2006).

15, 2006)). In particular, "[u]nder New York law, an employee owes a duty of good faith and loyalty to his employer." *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 659 (S.D.N.Y. 2005) (citing *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977)), *aff'd sub nom. Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006); *see, e.g.*, *Gortat*, 585 F. Supp. 2d at 376; *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 373–74 (S.D.N.Y. 2006). The duty of loyalty includes the duty to refrain from misusing the employer's confidential information. *Gortat*, 585 F. Supp. 2d at 376; *see also Wrap-N-Pack*, 528 F. Supp. 2d at 126; *Paz*, 514 F. Supp. 2d at 409–10.

For the reasons discussed *supra*, the complaint adequately alleges that Chappell misappropriated plaintiff's confidential information for his own benefit. Accordingly, the complaint states a plausible claim for breach of the duty of loyalty.[11]

---

[11] Plaintiff's complaint titles Count VI as "Diversion of Corporate Opportunity and Breach of Duty of Loyalty." (Compl., at 21.) "The doctrine of 'corporate opportunity' provides that corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation." *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 542 N.Y.S.2d 530, 533 (N.Y. App. Div. 1989). Courts identify a "corporate opportunity" either by asking whether the corporation has a "tangible expectancy" in the opportunity, or by asking whether the opportunity is "the same as or is necessary for, or essential to, the line of business of the corporation." *Design Strategies*, 384 F. Supp. 2d at 672 (internal quotation marks omitted). Here, based on the allegations in Count VI and in the complaint as a whole, the Court construes plaintiff's claim to be one for breach of the duty of loyalty by misappropriating confidential information, and not one diversion of corporate opportunity.

## IV. CONCLUSION

For the foregoing reasons, IAS's motion to dismiss for lack of personal jurisdiction is granted, Chappell's motion to dismiss for lack of personal jurisdiction is denied, and Chappell's motion to dismiss for failure to state a claim upon which relief may be granted is denied except with respect to the conversion claim. Accordingly, all claims against IAS, and the conversion claim against Chappell, are dismissed. Finally, the Court grants plaintiff leave to file an amended complaint if plaintiff wishes to maintain this action against IAS. Plaintiff shall submit an amended complaint no later than thirty days from the date of this Memorandum and Order.

SO ORDERED.

---

JOSEPH F. BIANCO
United States District Judge

Dated: May 6, 2014
  Central Islip, NY

\*   \*   \*

Plaintiff is represented by Frank A. Andrea, III, and Robert L. Towsky, Andrea & Towsky, Esqs., 320 Old Country Road, Suite 202, Garden City, NY 11530. Defendants are represented by Gregory S. Lisi and Alesia J. Kantor, Forchelli Curto Deegan, Schwartz, Mineo & Terrana, LLP, 333 Earle Ovington Boulevard, Suite 1010, Uniondale, NY 11553.